[Crim. No. 15015. Second Dist., Div. Five. Nov. 7, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
CREIGHTON CLOUD, Defendant and Appellant.

**COUNSEL**

Julian J. Schamus, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark W. Jordan, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**AISO, J.**—Defendant was charged by information with having committed batteries upon two parole agents (on William Mooneyham in count I and on Richard J. Jensen in count II) in violation of sections 242 and 243 of the Penal Code.[1] The information was amended to add a prior felony conviction for robbery (Pen. Code, § 211). Defendant pleaded not guilty to counts I and II, but admitted the prior felony conviction. A jury found him guilty as charged in count I and of a simple battery, a lesser and necessarily included offense to the charge in count II. Defendant's motion for a new trial was denied and he was sentenced to state prison on count I, consecutive to any sentence then being served. Count II was dismissed in the interests of justice at time of sentence. Defendant appeals from the judgment and the order denying his motion for a new trial.[2]

I

The evidence consists only of the testimony of the two parole agents, Bill Mooneyham and Richard J. Jensen, and exhibits (diagram of the office

---

[1] At the time of conviction, a peace officer as used in section 243 was defined by reference to section 817 of the Penal Code. A parole agent was within the meaning of a "peace officer" (*People* v. *Clark* (1968) 263 Cal.App.2d 87, 93 [69 Cal.Rptr. 218]). Section 817 was repealed (Stats. 1968, ch. 1222, § 58) and section 243 was reworded so that a peace officer is one designated by newly enacted sections 830.1, 830.2, and 830.6, subdivision (a). Section 830.5 defining a parole officer as a peace officer for limited purposes is not mentioned in section 243. The effect of this change will be discussed later.

The information described the offenses as being in "violation of section 242, Penal Code" only, instead of sections 242 and 243, but offenses in violation of the latter section were otherwise charged by the pleadings and no demurrer was interposed. (*People* v. *Scrivens* (1969) 276 Cal.App.2d 429, 432, fn. 4 [81 Cal.Rptr. 86].)

[2] The attempted appeal from the order denying the motion for new trial must be dismissed as such an order is not appealable. (*People* v. *Durham* (1969) 70 Cal.2d 171, 176-177, fn. 1 [74 Cal.Rptr. 262, 449 P.2d 198].)

floor plan and snapshots depicting the room, furniture, and hallways) introduced by defendant. Defendant did not testify; the foundation for his exhibits was laid by cross-examination of the People's witnesses. Since sufficiency of the evidence to support the conviction upon count I has been challenged, the evidence will be fully detailed.

(a) Mooneyham's testimony:

He was a parole agent employed by the State of California on September 8, 1967. He had first met defendant on July 21, 1967, when defendant was released on parole following his conviction for robbery (Pen. Code, § 211) and Mooneyham was assigned as his parole agent. He had explained his functions to defendant on that date. He had seen defendant officially five times prior to September 8, 1967. Mooneyham's office was at 7143 Seville Avenue, Huntington Park, and defendant had come there on previous occasions.

On September 8, 1967, defendant came to Mooneyham's office around 11:30 or 11:45 a.m. in response to Mooneyham's request. During the interview, defendant was seated on a chair alongside the right side of Mooneyham's desk and facing toward Mooneyham. Mooneyham requested him to stand up and empty his pockets. Defendant complied. Mooneyham then informed defendant that he had broken some conditions of his parole and that Mooneyham was "about to book him." He instructed defendant to turn around and put his hands on the wall. As Mooneyham proceeded to sit down at his desk to take out his handcuffs from his lower right-hand desk drawer, defendant turned around, grabbed the items which he had emptied previously from his clothing onto the table, said "I'm not going to be booked," and started to head for the exit. Mooneyham "put his hand on defendant's arm" to restrain him. Defendant's "movement and [Mooneyham's] grip on [defendant's] arm there put [Mooneyham] off balance to some degree" and Mooneyham's legs became entangled with the legs of the chair, causing him to lose his balance. Entanglement with this chair and having hold of defendant and trying "to come out of this entanglement" are the last things prior to his losing consciousness of which Mooneyham has any recollection.

The first thing he recalled upon regaining consciousness was his being in the washroom, down the hall from his office, with his fellow parole agent Jensen. He became aware that he had blood all over himself. He had had no injuries prior to his memory fade-out. Now he had a fractured nose, two teeth chipped in the lower left jaw, and a laceration three-quarters to one inch long just under his left eye, extending from the bridge of his nose. The eye was "extremely painful, and [he] had no vision from the eye." The teeth required dental care, the laceration seven "sutures." Mooneyham was hospitalized for three days for his injuries.

(b) Jensen's testimony:

His full name is Richard J. Jensen and he also was a parole agent for the State of California on September 8, 1967. His office was in the same building as Mooneyham's, with whom he was acquainted. He was wearing a sport jacket, a white shirt and tie, and sport slacks. He saw both Mooneyham and defendant on September 8, 1967. He was walking past Mooneyham's office around 12 noon or 12:15 p.m., and saw Mooneyham and defendant talking in Mooneyham's office. Shortly thereafter he heard Mooneyham call his name, "Dick," and "a bumping against the walls, as if a commotion were going on." Jensen responded immediately to Mooneyham's call. The outside door leading to Mooneyham's office via an interior hallway was about two-thirds closed when Jensen first heard the commotion. As he pushed open the door, he saw Mooneyham in "the hallway opposite the doorway of Mooneyham's office" either "slipping or already partially on the floor, with, oh, one hand somewhat on [defendant's] arm."

Just as he caught a glimpse of Mooneyham and defendant, defendant struck him (Jensen) with his fist. Jensen received a cut to the side of his nose and a "cut almost between the eyes." The cut required approximately six stitches. He was to the defendant's left side when he received the blow. The blow was of sufficient strength to cause Jensen to bounce against the right-hand side wall and fall down. It also rendered him "groggy" or "stunned," although he was not rendered unconscious.

He saw defendant leave the front entrance to the building on Seville, moving rapidly.

Jensen tried to stop the flow of blood both from himself and from Mooneyham, who was bleeding around the eye and nose, with "a considerable amount of blood" flowing.

Later that day, Jensen returned to the Seville office building. It was still before 5 o'clock. He did not observe any blood spots near the chair in which defendant had been seated, although there was a considerable amount of blood in the hallway just outside Mooneyham's office.

## II

Having elicited the foregoing facts from Mooneyham and Jensen, the People rested their case in chief. Defendant then out of the presence of the jury moved "pursuant to section 1118.1 [Pen. Code][3] for judgment of

---

[3]Penal Code section 1118.1: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judg-

acquittal" on both counts I and II. The motion was denied as to count I but granted as to count II. Proceedings were then resumed in open court before the jury. Defendant asked that the exhibits be received into evidence, but offered no testimony and rested. The jury was not informed of the court's action granting defendant's motion as to count II. Proceedings were adjourned to the following day. When trial proceedings were resumed at 11 a.m. the following day, the trial judge out of the jury's presence vacated his grant of the motion as to count II and denied it. Defense counsel objected that the grant of the motion the previous day "was in effect res judicata as to the offense and any lesser included offense" and that the court did not at that time have the power to vacate what amounted to a judgment of acquittal previously granted.

The judge overruled the objection upon the ground that he had not informed the jury of his action and offered the defendant the opportunity of producing further evidence in view of his change of ruling. Defendant, however, declined the offer.

Defendant assigns this action on the part of the trial judge as error, but the issue became moot when the second count was later dismissed in the interests of justice at time of judgment. No prejudice resulted from the evidence as to the second count remaining in the case for its probative value on the issue of defendant's guilt or innocence on count I. ■ "It is settled . . . that competent and otherwise admissible evidence of another crime is not made inadmissible by reason of the defendant's acquittal of that crime. [Citations.]" (*People* v. *Griffin* (1967) 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507].)

### III

■ The evidence, contrary to defendant's contention, sufficiently supports the conviction on count I. ■ "This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].) ■ If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Love,* 53 Cal.2d 843, 850-851 [3 Cal.Rptr.

ment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

665, 350 P.2d 705].) ■ The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; *it is not whether guilt is established beyond a reasonable doubt. (People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].) ■ Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].)" (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

■ The People may establish defendant's guilt by circumstantial evidence. "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." (*People* v. *Hillery* (1965) *supra,* 62 Cal.2d 692, 702, cert. denied, 386 U.S. 938 [17 L.Ed2d 810, 87 S.Ct. 958].)

■ The jury could have found that the injuries suffered by Mooneyham were too severe to have been caused by a person stumbling across a chair. There was no blood on the floor near the chair, but there was blood on the floor of the hallway outside Mooneyham's office indicating that the injuries occurred beyond the locus of the chair. His cries for help from his co-worker "Dick" can be interpreted to be a call for help for purposes other than merely to prevent defendant's escape. Moreover, the similarity of injuries (nature, location, and force applied) inflicted on Jensen who also was standing to defendant's left when he received defendant's blow is probative of defendant's having inflicted a similar injury on Mooneyham.

Mooneyham was a peace officer within the meaning of section 243 of the Penal Code, which then provided that "A battery . . . [w]hen . . . committed against the person of a peace officer . . . and the person committing the offense knows or reasonably should know that such victim is a peace officer . . . engaged in the performance of his duties, and such peace officer . . . is engaged in the performance of his duties, . . . shall be punished by imprisonment in the state prison. . . ." The section also provided that a peace officer is a person designated as such in the first paragraph of section 817 of the Penal Code. A parole agent was such a peace officer. (*People* v. *Clark, supra,* 263 Cal.App.2d 87, fn. 1, 93, fn. 3.) Defendant had ample notice that Mooneyham was his parole agent engaged in the performance of his official duties.

■ Since the evidence was sufficient to sustain the conviction, a

fortiori there was no error in the trial judge's denial of defendant's motion for acquittal under section 1118.1 of the Penal Code as to count I, wherein Mooneyham was the victim.

## IV

■ Defendant complains that his request for CALJIC instruction No. 71-E on "Accident and Misfortune" should have been honored. It read: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil design, intention or culpable negligence, he does not thereby commit a crime, although the same act or omission committed under different circumstances and coupled with criminal intent would consitute a crime."

The instruction was not applicable. The issue was whether defendant intentionally inflicted "any wilful and unlawful force or violence upon the person" of Mooneyham, just as the judge instructed the jury. The only reasonable inference from the evidence is that the injuries to Mooneyham were not caused at the time he stumbled over the chair, but at some later point of time. Defendant's not guilty plea had denied *his application* of any force or violence *directly* on Mooneyham's person. There was no evidence that defendant slipped or fell bringing his body into involuntary contact with Mooneyham's. The giving of the instruction under such circumstances would have only served to confuse the jury by interjecting an extraneous issue not justified by the evidence. Defendant, moreover, was under a duty to refrain from using any force whatsoever to resist the arrest for the parole violation (Pen. Code, § 834a;[4] cf. *People* v. *Curtis* (1969) 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33]), which was being effected by means of reasonable force only. So if defendant did apply any force to Mooneyham's body, it would have constituted an unlawful force and a battery. No claim is made that defendant's striking Jensen was due to any accident or misfortune on defendant's part.

## V

Defendant contends that the record on appeal is defective, citing rule 33, subd. (a) (1), California Rules of Court,[5] and pointing out that the record

[4]Penal Code section 834a: "If a person has knowledge or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest."

[5]Rule 33: "(a) If the appeal is taken by the defendant from a judgment of conviction . . . the record on appeal, except as hereinafter stated, shall include the following (which shall constitute the normal record): (1) A clerk's transcript, containing copies of (a) the notice of appeal, *any certificate of probable cause executed and filed by the court* . . . ." (Italics added.)

lacks the certificate of probable cause by the magistrate binding defendant over to the superior court for trial. The words, "any certificate of probable cause executed and filed by the court" as used in the rule cited refers to the "certificate of probable cause" referred to in Penal Code section 1237.5, subdivision (b), providing that "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, except where . . . (b) the trial court has executed and filed a certificate of probable cause for such appeal with the county clerk." ■ If defendant contends that he was not legally bound over to answer for the crime charged in the superior court, he cannot raise the issue for the first time on appeal. (*People* v. *Harris* (1967) 67 Cal.2d 866, 870 [64 Cal. Rptr. 313, 434 P.2d 609], appeal dismissed, cert. denied, 391 U.S. 603 [20 L.Ed.2d 848, 88 S.Ct. 1867].)

## VI

■ Finally, we consider the contention of defendant that the 1968 amendment to section 243 of the Penal Code (effected subsequent to the imposition of punishment in this case on March 1, 1968) in effect was a statutory change mitigating punishment and that hence under the reasoning of *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], he should be given the benefit of a misdemeanor, rather than a felony sentence. The People contend that the stuatutory change was a change in an essential element of a felony offense and hence there should be no retroactive application and that section 9608[6] of the Government Code and section 3[7] of the Penal Code control, leaving defendant punishable as a felon. At first blush, the People's contention appears logically reasonable, but upon further analysis, the net effect of the statutory change was to leave defendant punishable under the first sentence of section 243 of the Penal Code, which provides for a misdemeanor sentence. In other words, the amendment did not in effect provide that the act of which defendant was convicted is no longer a crime, but rather that such an act is a battery under section 242 of the Penal Code "punishable by fine of not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months" unless committed upon a peace officer as defined by reference to sections 830.1, 830.2, or 830.6, subdivision (a), added by Statutes of 1968, chapter 1222. (Pen. Code, § 243.) A parole officer is

---

[6]Government Code section 9608: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law."

[7]Penal Code section 3: "No part of it [Penal Code] is retroactive, unless expressly so declared."

declared to be a peace officer for purposes of performing his functions as a parole officer by section 830.5 of the Penal Code, as added by Statutes of 1968, chapter 1222, but this section 830.5 was not included in section 243 as amended. The previous section 817, which classified a parole officer as a peace officer within the meaning of section 243, was repealed at the same time. Under the reasoning of *In re Estrada* (1965) *supra,* defendant is entitled to be sentenced as a misdemeanant, rather than as a felon, notwithstanding the provisions of section 9608 of the Government Code and section 3 of the Penal Code. (*In re Kirk* (1965) 63 Cal.2d 761 [48 Cal.Rptr. 186, 408 P.2d 962]; *People* v. *Enriquez* (1967) 65 Cal.2d 746, 748-751 [56 Cal.Rptr. 334, 423 P.2d 262].) Furthermore, in this case this interpretation that the legislative intent was to mitigate punishment is fortified by the Legislature's mitigating the punishment to an alternative county jail sentence even where a peace officer mentioned in section 243, as amended, is involved. This court has held that under *People* v. *Francis* (1969) 71 Cal.2d 66, 75 [75 Cal.Rptr. 199, 450 P.2d 591], a convicted defendant in that situation is entitled to have the trial court retroactively determine whether a misdemeanor sentence should be imposed. (*People* v. *Scrivens, supra,* 276 Cal.App.2d 429, 432, fn. 1.)

## VII

The judgment convicting defendant of a felony violation of section 243 of the Penal Code is ordered to be set aside and the case remanded to the trial court with directions to enter a conviction of a misdemeanor violation of section 242 of the Penal Code, and thereafter to pronounce sentence in accordance with the first sentence of section 243 of the Penal Code, granting defendant credit for time served if he has served time on the consecutive sentence imposed in this case in addition to his previous sentence on the prior robbery conviction. (*People* v. *Enriquez, supra,* at p. 751; *In re Kirk, supra,* at p. 763.) The attempted appeal from the order denying motion for new trial is dismissed.

Stephens, Acting P. J., and Reppy, J., concurred.