STATE *ex rel.* NELSON PAUL ARBOGAST

*v.*

RICHARD G. MOHN, *Act. Supt.*, WVP

(No. 14531)

EMANUEL J. RODOUSSAKIS, JR.

*v.*

WILLIAM WHYTE, *Supt.*, HCC

(No. 14571)

Decided December 4, 1979.

*David P. Born,* for plaintiff in error and relator in both cases.

*Chauncey H. Browning,* Attorney General, *Joseph C. Cometti,* Assistant Attorney General, for defendant-in-error and respondent in both cases.

McGRAW, JUSTICE:

These cases, one an appeal on writ of error, and the other a petition for habeas corpus, are consolidated for our determination since they both present similar basic issues. The major issue is: should a criminal defendant be allowed the benefit of a statutory amendment which was not in effect at the time the offense was committed but which was in effect at the time of conviction and sentencing, where the amendment has the effect of reducing the offense from a felony to a misdemeanor and where the defendant did not elect to be sentenced under the new law prior to conviction? The statutory change in question is the 1977 Amendment to W. Va. Code § 61-3-13.

Appellant Nelson Paul Arbogast was indicted on June 14, 1977, upon the charges of larceny of goods valued at $100.00 and receiving stolen goods in the value of $100.00, the larceny and the receiving of stolen goods having occurred in November, 1976. On July 8, 1977, appellant was convicted upon a plea of guilty, of the second count of the indictment, charging the crime of receiving stolen goods. On July 22, 1977, appellant was sentenced to a term in the penitentiary of not less than one nor more than ten years.

The petitioner, Emanuel John Rodoussakis, was indicted on April 19, 1977, on the charge of larceny of a tape

player of a value of $100.00, such larceny having occurred in September, 1975. An earlier indictment on the same charge had been quashed or dismissed. On November 14, 1977, petitioner Rodoussakis was convicted on a plea of guilty. On December 2, 1977, he was sentenced to a term in the West Virginia Penitentiary of not less than one nor more than ten years.

On March 30, 1977, the West Virginia Legislature passed Chapter 79 of the Acts of the West Virginia Legislature, which amended and reenacted W. Va. Code § 61-3-13, dealing with the crimes of grand and petit larceny.[1] The effect of the 1977 Amendment was to raise the value demarcation between grand larceny and petit larceny from $50.00 to $200.00. Chapter 79 also created an alternative penalty of confinement for up to one year in the county jail and a fine of not more than $500.00 to be applied in the discretion of the trial court upon conviction for grand larceny. A petit larceny conviction now carries an alternative penalty of a mere fine. This amendment became effective on or about June 28, 1977.

---

[1] W. Va. Code § 61-3-13 [1977]:

(a) If any person commits simple larceny of goods or chattels of the value of two hundred dollars or more, such person shall be guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and shall be fined not more than five hundred dollars.

(b) If any person commits simple larceny of goods or chattels of the value of less than two hundred dollars, such person shall be guilty of a misdemeanor, designated petit larceny, and, upon conviction thereof, shall be confined in the county jail for a term not to exceed one year or fined not to exceed five hundred dollars, or both, in the discretion of the court.

Prior to the 1977 Amendment, W. Va. Code § 61-3-13 read as follows:

If any person commit simple larceny of goods or chattels, he shall, if they be of the value of fifty dollars or more, be deemed guilty of grand larceny, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than ten years; and if they be of less value, he shall be deemed guilty of petit larceny, and upon conviction thereof, be confined in jail not exceeding one year. [1957].

Appellant Arbogast filed with this Court, on January 3, 1979, a petition for habeas corpus relief, alleging that by virtue of the 1977 Amendment to W. Va. Code § 61-3-13, which became effective before his conviction, he was being held in the West Virginia Penitentiary illegally as the crime for which he was incarcerated was only a misdemeanor.[2] The petition was referred to the Circuit Court of Preston County which, on February 26, 1979, denied the relief sought by appellant. Appellant again filed a petition for habeas corpus relief with this Court which we elect to treat as a petition for writ of error from the decision of the circuit court. Petitioner Rodoussakis filed a petition for habeas corpus relief with this Court on June 22, 1979, contesting the legality of his confinement in the penitentiary on the same ground.

I

Petitioner and appellant contend that as they were convicted and sentenced after the effective date of the 1977 Amendment to the larceny statute, they were guilty only of misdemeanors and should have been sentenced accordingly. We agree that the imposition of the harsher penalty under the former law was error, but we are of the opinion that the amendment did not affect the characterization of the offenses as felonies.

The rule in West Virginia is that the statute in force at the time of the commission of an offense governs the character of the offense and, generally, the punishment prescribed thereby. *State ex rel. Strickland v. Melton,* 152 W.Va. 500, 165 S.E.2d 90 (1968); syl. pt. 4, *State v. Wright,* 91 W.Va. 500, 113 S.E. 764 (1922). This rule is derived from W. Va. Code § 2-2-8, the general savings statute, which reads in material part:

> The repeal of a law ... shall not affect any offense committed, or penalty or punishment in-

---

[2] Under W. Va. Code § 61-3-18, one convicted of the crime of receiving stolen goods is "... deemed guilty of the larceny thereof. ..." The characterization of the offense as a misdemeanor or felony and the penalty to be imposed are determined by W. Va. Code § 61-3-13.

curred, before the repeal took effect, ... save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.

This statute, taken from the 1849 Virginia Code, Chapter 16, § 18, was a legislative response to problems created by the common law doctrine of abatement, under which the repeal of a criminal statute, without the inclusion by the Legislature of a specific savings clause, operated as a discharge from criminal liability of all persons who had committed offenses under the old law and had not been tried prior to the date of the repeal.[3] W. Va. Code § 2-2-8 is to be read as a proviso to any repealing act which does not contain an express savings clause, and operates to preserve prosecution of offenses committed under a repealed statute which have not reached final judgment.

We note that Chapter 79 of the Acts of the Legislature styled the 1977 change in W. Va. Code § 61-3-13 as "[a]n act to amend and reenact" that section rather than as a repeal and that the savings statute refers only to repeals. However, it is a general rule of statutory interpretation that those provisions of an earlier act which are irreconcilable with those of an amendatory act are impliedly repealed. 1A J. Sutherland, *Statutes and Statutory Construction* § 23.12 (4th ed. C. D. Sands 1972). Thus, while characterized as amendatory, the provisions of the later act operate as a repeal of inconsistent provisions in the prior act and are subject to the savings

---

[3] *Com. v. Leftwich*, 5 Rand. 657, 26 Va. 657 (1827); *Attoo v. Com.*, 2 Va. Cas. 382, 4 Va. 382 (1823); *Scutt v. Com.*, 2 Va. Cas. 54, 4 Va. 54 (1817).

For a discussion of the doctrine of abatement see Comment, *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, 121 U. Pa. L. Rev. 120, 121-127 (1972).

statute. *See*, syl. pt. 2, *State v. Tippins*, 91 W.Va. 504, 113 S.E. 751 (1922); *see also* 1A Sutherland, *supra*, § 23.26.

We think that, following the language and purpose of the savings statute, the amendment to W. Va. Code § 61-3-13 in no way affected the felonious character of the offenses committed by appellant and petitioner. The acts performed by petitioner and appellant in September, 1975 and November, 1976, respectively, which led to the charges below, constituted felony offenses at the time they were committed. The criminality of their actions attached at the time they were performed, under the statute then in effect. A subsequent absolute repeal of the statute criminalizing those acts before trial without a savings clause would have discharged the petitioner and the appellant from all criminal liability. The existence of the general savings statute, however, preserves the right to prosecute under the repealed statute. So it is with amendments. An amendment to a penal statute which redefines the offense does not affect the character of the offense under the former law when the offense was committed prior to the effective date of the amendment. Insofar as the new law repeals the old, W. Va. Code § 2-2-8 preserves the right of prosecution and the characterization of the offense under the former law. This is the effect of the statute and the clear intent of the Legislature.

With respect to the penalty to be imposed, however, the general savings statute clearly does not contemplate such a result, except in cases of an absolute repeal. W. Va. Code § 2-2-8 clearly provides for the application of mitigated penalties to a judgment rendered after the effective date of a statutory amendment upon the election of the party affected. Syl pt. 4, *State v. Wright*, 91 W.Va. 500, 113 S.E. 764 (1922). This is in keeping with the general rule that where a repeal arises by implication from the imposition of a lesser penalty for the same offense, the mitigated penalty may be imposed although the prosecution proceeds under the repealed act. 1A J. Sutherland, *supra*, § 23.38.

We recognize that it can be argued that the statutory amendment to W. Va. Code § 61-3-13 does not actually mitigate the penalties imposed under the old law. Indeed, the direct effect of the change is to redefine the offenses of grand and petit larceny and to provide additional alternative penalties which may be applied in the discretion of the sentencing court. The penalties prescribed under the former law remain intact.

We think, however, that the *net effect* of the amendment was indeed, to mitigate the penalties imposed for the offenses of which petitioner and appellant were convicted. While the amendment changed an essential element of the offenses of grand larceny, it also effectively reduced the punishment for larceny of goods of a value of one hundred dollars from confinement in the penitentiary for one to ten years to confinement in the county jail for up to a year and/or a fine. The Legislature made a determination that the imposition of an indeterminate sentence in the penitentiary was too harsh a penalty for such an offense, considering the value of the goods stolen and expressed its intention that from the effective date of the amendment such crimes would be punished under the former law's misdemeanor penalty. The intent to mitigate punishment is reinforced by the provision by the Legislature for an alternative penalty which can be applied in the discretion of the sentencing judge. *People v. Cloud*, 1 Cal. App.3d 591, 81 Cal. Rptr. 716 (1969); *see also In re Estrada*, 63 Cal.2d 740, 408 P. 2d 948, 48 Cal. Rptr. 172 (1965).

We are of the opinion that the 1977 amendment to the larceny statute, W. Va. Code § 61-3-13, did indeed have the effect of mitigating the penalties prescribed by that section, as contemplated by the general savings statute, W. Va. Code § 2-2-8. When a general savings statute specifically provides for the application of mitigated penalties upon the election of the affected party he is entitled to choose the law under which he wishes to be sentenced.[4]

---

[4] We note that in a number of jurisdictions with general savings statutes similar to our own, but not containing provisions for elec-

## II

Neither petitioner nor appellant herein exercised his option under the savings statute to choose to be sentenced under the new law. Both contend that they were unaware of their right to elect and the records before us give no indication that they were advised of this right by either counsel of the court. Petitioner and appellant maintain that they should have been informed of their right to elect the sentencing scheme under which they would be punished and that the failure of the sentencing court to do so invalidates their respective guilty pleas. We agree.

The Legislature, by virtue of the provisions of our savings statute, has conferred upon the criminal defendant the right to elect the sentencing scheme under which he will be punished. This Court has previously recognized that the failure of a sentencing court to grant the election upon proper application would be reversible error. *State v. McClung*, 116 W.Va. 591, 182 S.E. 865 (1935). *McClung* also held, without explanation, that there was no duty on the part of the court to inform the defendant of his right to elect. We cannot allow that erroneous holding to stand. Petitioner and appellant were entitled to choose to be sentenced under the new law. If their right to elect was to have any meaning, they should have been given an opportunity to know of it and to exercise it. The record does not show that either petitioner or appellant was advised of his right to, or permitted to make that election. In the absence of a showing on the record that petitioner and appellant

tion of sentencing schemes, the courts have held that a lesser penalty outlawed in the new law *must* be applied in all cases. These cases proceed on the theory that the Legislature has made a determination that the former penalty was too harsh and that the lesser penalty is sufficient to meet the ends of justice. Since the Legislature must have intended the amendatory act to apply to every case to which it could constitutionally apply, the lesser penalty should be imposed in all cases not having reached final judgment. The leading cases in this area are In *re Estrada*, 63 Cal.2d 740, 408 P.2d 948, 48 Cal. Rptr. 172 (1965), and *People v. Oliver*, 1 N.Y.2d 152, 134 N.E.2d 197, 151 N.Y.S.2d 367 (1956).

14

were informed of their right to elect the sentencing scheme under which they would be punished, or an express waiver of that right, we must conclude that petitioner and appellant were denied due process. *People v. Hollins*, 51 Ill.2d 68, 280 N.E.2d 710 (1972).

Moreover, the failure of the court to fully inform the defendant of his right to elect and of the possible sentences he may be given is contrary to our holding in *Riley v. Ziegler*, ___ W. Va. ___, 241 S.E.2d 813 (1978) that in order for a guilty plea to be voluntary and intelligent the court must accurately and completely explain to the defendant the possible penalties under the law. In neither case here were petitioner nor appellant informed of the possibility that they could be sentenced under the new law. Petitioner and appellant were not made fully aware of the possible consequences of their pleas and, therefore, did not make knowing, intelligent and voluntary pleas.

For these reasons, and to avoid possible challenges to convictions and guilty pleas, we hold that when a criminal defendant is entitled to elect the law under which he is to be sentenced, it must appear on the record that he has been fully advised of his right to elect and he must be given an opportunity to exercise that right by the court.

While, by virtue of this holding, we are not required to reach appellant's contention that the failure of his attorney to inform him of his right to elect constituted ineffective assistance of counsel, we think it is incumbent upon counsel to so advise his client. Clearly, an attorney always has the responsibility to inform his clients of all of their rights under the law, especially in criminal cases where the threat of incarceration is involved. While the failure of counsel to advise appellant of one of his rights may not constitute ineffective assistance of counsel here, we admonish him that he has the primary responsibility as an officer of the court to insure that his clients receive the full benefit of their rights under the law.

## III

Petitioner's final argument is that his case was prejudiced by statements made to the court by his attorney in support of a motion to withdraw from the case.[5] We find

[5] MR. ROBERTSON: As the Court previously stated, I was appointed as counsel at the April 1875 term and that was on the indictment that had been returned in 1975, for which previous counsel had been selected and withdrew, and I was then appointed by the Court to take his place, and for an additional indictment which was returned at that April 1976 term. After that particular appointment much difficulty was had in corresponding or getting in touch with my client. I know that a client has the right to expect a certain zeal from his attorney, and fidelity, but I think it works two ways, and a certain zeal and fidelity from the client is also to be expected. But I received none of this from this client. Every contact that was made was after my phoning and phoning and phoning and trying to get hold of him, and almost running him down to get him, to get him to see me about trying to prepare his defense. He has repeatedly failed to keep in touch. All contact has been by me. There has been no cooperation from the defendant. He has placed me in the position where I could not formulate a proper defense, if he even has one. In order to see the client, on one occasion this Court had to call him in and place him in jail, for me, for him to be available. We have had motions that were filed in this case, based on scanty evidence from the defendant, which later proved that the grounds therefore were perhaps improper and had to be withdrawn. There have been repeated requests by the defendant for continuance of his trial, on every purpose that he could think of, to delay, even not getting in touch with me. He has used that. I would say that this path we have followed has been littered by broken commitments and unfulfilled promises, and the attitude that either the entire matter will go away or that his attorney will somehow, through osmosis, handle the thing. Every failure on his part was somehow tried to be explained by some frivolous excuse which justifies his failure * * * or his conduct. All of them have been frivolous.

It has been impossible for counsel to impress upon this defendant the seriousness of his position, the seriousness of his crime for which he is charged. It has been impossible to obtain his full cooperation as I should. This last indictment which was returned, he attempted to employ me and we arrived at the terms for the employment—for example of the way in which counsel has been dealt with—the defendant said that the next morning by 9:00 o'clock he would be in with the initial retainer. And this is the first time that I have laid eyes on this defendant since that day. When I called him to ask him why it wasn't paid, he agreed to bring in a

no evidence that the remarks of counsel influenced the judge in any way against petitioner. No jury had been impanelled and the statement of counsel had nothing to do with the merits of the case. The record reveals that petitioner, in reply to counsel's statements, denied none of the allegations and was equally unhappy with his attorney. On these facts, we do not think the remarks of counsel prejudiced petitioner's case.

For the reasons cited herein, we reverse the ruling of the Circuit Court of Preston County and remand appellant Arbogast's case for further proceedings consistent with this opinion, and award the writ prayed for by petitioner Rodoussakis.

> *(Arbogast) Reversed and remanded.*
> *(Rodoussakis) Writ awarded.*

---

sum of money, and I asked him what the reason was for the withholding of it and he said, well, he had a motorcycle he was going to buy and he couldn't pay me. Each time there has been a purpose of delay, and I think that what has happened in our relationship, all of this taken together, has seriously affected my ability to make sure that this man gets a fair trial to which he is entitled, because of all the things that he has let down on, his failures, his attitude and his nature of being uncooperative, has, I believe, in all fairness to the Court, prejudiced me to the extent that if I were to represent this man at trial, it would be very difficult for me to make proper objections. I might be mesmerized by the State's case that comes in against him, and based on my past experience with him, that I might not interpose necessary objections in proper strength in respect to any question or anything that comes in. Therefore, Your Honor, accordingly, to make sure that this man is treated fairly and that he gets a fair trial, I think that it is in his best interests and my best interests that I be relieved as counsel. In accordance, I will state that, in all my experience, this is the first time I have appeared in any court to make this request, but I feel that I should make it in this case.