525 S.E.2d 326

**STATE of West Virginia, Plaintiff below, Appellee,**

v.

**Timothy Ray CLINE, Defendant below, Appellant.**

No. 25924.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1999.

Decided Dec. 3, 1999.

Concurring and Dissenting Opinion of Justice Davis Dec. 10, 1999.

Thomas W. Smith, Esq., Charleston, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Leah P. Macia, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

PER CURIAM:

The appellant, Timothy Ray Cline, appeals his conviction in the Circuit Court of Mercer County for the first offense of driving on a suspended license in violation of *W.Va.Code*, 17B–4–3(a) [1994]. At the time of the appellant's arrest, the statute stated that, upon conviction, a defendant was required to serve a mandatory 48–hour sentence in a jail, and pay a fine of between $50.00 and $500.00.

The circuit court, in an order dated August 10, 1998, sentenced the appellant to 48 hours in a regional jail, and fined the appellant $250.00.

After examination of the record, the briefs and the arguments of the parties, we conclude that sufficient evidence was introduced by the State to support the appellant's conviction. However, as set forth below, because the Legislature amended *W.Va.Code*, 17B–4–3(a) in 1999 to remove jail as a sentencing alternative from the statute, we reverse the circuit court's August 10, 1998 sentencing order and remand the case for resentencing of the defendant.

I.

On June 22, 1997, while driving his pickup truck through Mercer County, West Virginia, appellant Cline was stopped by a West Virginia State Trooper named Bledsoe and given a citation for having a broken tail light. The appellant did not elect to pay the citation, and did not appear in court to contest Trooper Bledsoe's charges. Instead, the appellant gave the citation to a friend who was also a state trooper, and asked the friend if he could "help him out on the citation." The friend took the citation and said he would contact Trooper Bledsoe. Unfortunately for the appellant, the friend lost the citation and forgot to speak with Trooper Bledsoe.

When the appellant failed to respond in any way to the citation, on October 31, 1997, the Mercer County Magistrate Court formally notified the Department of Motor Vehicles ("DMV") that the appellant had failed to "respond to a citation in court, or pay court-imposed assessments." *See W.Va.Code*, 50–3–2a(d)(1) [1997].[1]

Pursuant to the process for suspending drivers' licenses set forth in *W.Va.Code*, 17B–

---

1. *W.Va.Code*, 50–3–2a(d)(1) [1997] states, in pertinent part:

    If a person charged with any criminal violation of this code fails to appear or otherwise respond in court, the magistrate court shall notify the commissioner of the division of motor vehicles thereof within fifteen days of the scheduled date to appear, unless the person sooner appears or otherwise responds in court to the satisfaction of the magistrate. Upon such notice, the division of motor vehicles shall suspend any privilege the person failing to appear or otherwise respond may have to operate a motor vehicle in this state, including any driver's license issued to the person by the division of motor vehicles, until final judgment in the case and, if a judgment of guilty, until such time that all the costs, fines, fees, forfeitures, restitution or penalties imposed are paid in full[.]

3–3c [1993], the DMV mailed an "Official Notice—Order of Suspension" to the appellant at the address he had provided to Trooper Bledsoe. This was also the address the appellant had given to the DMV as his residence. This DMV notice was to inform the appellant that his driver's license was being suspended because he had "failed to pay or respond" to the citation. The appellant contends that he never received the notice.

The suspension of the appellant's license took effect at 12:00 a.m., midnight, on January 10, 1998. The testimony presented by the State at trial indicates that shortly after midnight on January 10, 1998, two state troopers driving eastbound passed the appellant, driving westbound, on a road in Mercer County. One trooper noticed that the appellant's pickup truck had a broken tail light. The troopers next saw the appellant's vehicle slow and perform a U-turn; the troopers pulled to the side of the road, let the appellant pass, and then pulled the appellant over.

The troopers called their dispatcher and ran a check on the appellant's driver's license. At 12:08 a.m., the dispatcher notified the troopers that the appellant's license had been suspended for an unpaid citation, effective at midnight. The troopers arrested the appellant and charged him with driving while his license was lawfully suspended or revoked, in violation of *W.Va.Code*, 17B–4–3(a) [1994].

The appellant was tried in the Magistrate Court of Mercer County and convicted. He appealed his conviction to the Circuit Court of Mercer County, and evidence was presented in a bench trial held on August 7, 1998. After hearing the evidence of the parties, the circuit court again found the appellant guilty of driving on a license that was lawfully suspended or revoked. In an order dated August 10, 1998, pursuant to the mandatory provisions of *W.Va.Code*, 17B–4–3(a) [1994], the circuit court sentenced the appellant to 48 hours in the Southern Regional Jail, and fined the appellant $250.00. The circuit court stayed imposition of the sentence pending an appeal.

This appeal was then filed.

## II.

The appellant challenges the circuit court's August 10, 1998 sentencing order on four grounds. First, the appellant contends that the State failed to prove its case beyond a reasonable doubt. Second, the appellant argues that *W.Va.Code*, 17C–15–5 [1951] only requires that a vehicle have one operating tail light and therefore, because his June 1997 citation for having a broken tail light had no basis in law, the failure to respond to the citation could not form the basis for his license suspension and current conviction. Third, the appellant contends that if *W.Va. Code*, 17C–15–5 [1951] only requires one operating tail light, then the state troopers did not have probable cause to stop him for having a broken tail light in January 1998. Last, the appellant notes that the Legislature amended *W.Va.Code*, 17B–4–3 [1994] in 1999 to eliminate the mandatory 48 hour jail sentence, and to totally eliminate any jail sentence as a penalty for first offense driving on a suspended or revoked license. The appellant therefore takes the position that he should not be sentenced to the Southern Regional Jail for his conviction.

The first argument raised by the appellant is that there was insufficient evidence to support his conviction. We stated the standard of review governing challenges to the sufficiency of evidence in Syllabus Points 1 and 3 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

1. The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

\* \* \*

3. A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy bur-

den. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

The appellant was charged with violating *W.Va.Code,* 17B–4–3(a) [1994] for driving on a license that was suspended because the appellant failed to appear and respond to a citation. *W.Va.Code,* 17B–4–3(a) [1994] stated, in relevant part:

> [A]ny person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully suspended or revoked by this state or any other jurisdiction shall, for the first offense, be guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for forty-eight hours and, in addition to such mandatory jail sentence, shall be fined not less than fifty dollars nor more than five hundred dollars[.]

The testimony of the defendant establishes that he did not appear in court to respond to the 1997 citation because he thought his friend who was a state trooper was going to "take care of" the citation. Furthermore, documents from the DMV were introduced to establish that the appellant's license was sus-

pended for failing to respond to the citation, and that the appellant was mailed a notice of the suspension at his address.[2] Lastly, the testimony by the two state troopers was sufficient to establish that the appellant was operating a vehicle after midnight, January 10, 1998, when his license had been suspended. Viewing this evidence in the light most favorable to the prosecution, we therefore conclude that sufficient evidence was introduced by the State to prove, beyond a reasonable doubt, that the appellant committed the offense of driving on a license that was lawfully suspended or revoked.

The appellant, however, also asserts that the troopers' warrant only charged the appellant with having his license "suspended for unpaid citation." The appellant contends that he never appeared in magistrate court to contest the 1997 citation, and therefore the magistrate could not have assessed fines and costs that were "unpaid" when the appellant was arrested in January 1998. Hence, he contends that the evidence was insufficient to support a finding that he was driving on a license "suspended for [an] unpaid citation." We decline to address this semantic argument, as it was never raised in the circuit court. As we stated in Syllabus Point 4 of *Wheeling Downs Racing Association v. West Virginia Sportservice, Inc.,* 157 W.Va. 93, 199 S.E.2d 308 (1973): "This Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court." *In accord,* Syllabus Point 2, *Sands v. Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958).

The second argument posed by the appellant is that West Virginia law only requires a vehicle to have one operating tail light.[3] The appellant argues that he had an

---

**2.** The appellant takes the position that the mailing of a suspension notice alone is insufficient, and argues that *W.Va.Code,* 17B–3–3c(b) [1993] unequivocally requires that a licensee *receive* a notice of suspension prior to the suspension being lawfully effective. In support of this argument, the appellant cites to the statutory language that "[n]o order of suspension becomes effective until ten days after receipt of a copy of such order." The appellant asserts that this statute is different from the statute that we examined in *Nobles v. Sidiropolis,* 182 W.Va. 217, 220, 387 S.E.2d 122, 125 (1989), where we stated that

"[t]he certified mailing of the Notice of Pending Suspension is all that is required by the West Virginia Code[.]"

As we note in the text of our opinion, this is one of several arguments raised on appeal that was never raised in the circuit court; as with the other arguments, we decline to address it.

**3.** The appellant relies upon *W.Va.Code,* 17C–15–5(a) [1951] to make his argument that a vehicle is statutorily required to have only one operating tail light. The statute, entitled "Tail lamps," states, in pertinent part:

operating tail light when he was stopped by Trooper Bledsoe in June 1997, and that there was therefore no basis for Trooper Bledsoe to issue a citation for having a broken tail light, and that the appellant's failure to appear to contest the citation could not form the basis for the appellant's current conviction.

We reject the appellant's argument. The first and foremost reason to reject the argument is the fact that the appellant never responded in court to contest the 1997 citation. We again turn to our general rule that, when a nonjurisdictional question has not been refined, developed and adjudicated by the trial court, it will not be decided on appeal in the first instance. *Wheeling Downs Racing Association, supra; Sands v. Security Trust Co., supra.* If the appellant had appeared and responded to the charge alleged in the 1997 citation, a record could have been made of whether or not the appellant had an operating tail light and was not operating a vehicle in violation of the *Code.* Another reason for rejecting the argument is that, in this case, the appellant was not charged with driving with a broken tail lamp—he was charged with and convicted of driving on a suspended license. Hence, we have no factual record upon which to base a decision. The appellant never contested the grounds for suspending his license, and the evidence establishes beyond a reasonable doubt that the appellant did unlawfully operate a vehicle after his license was suspended in violation of *W.Va.Code,* 17B–4–3(a) [1994].

■ The appellant next contends that the reason the two state troopers stopped him in January 1998 was because of a broken tail light. The appellant, referring to his previous argument, contends that because he did have at least one operating tail light, his vehicle was in compliance with West Virginia law. As we have stated:

> Probable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowl-

edge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence.

Syllabus, *Simon v. West Virginia Dept. of Motor Vehicles,* 181 W.Va. 267, 382 S.E.2d 320 (1989). The appellant contends that because his vehicle had at least one operating tail light, the facts were not sufficient to warrant the two troopers' belief that a misdemeanor was being committed in their presence. In other words, there was no probable cause to stop the appellant's vehicle, and the subsequent license check that revealed the appellant's license had been suspended was unlawful.

We reject the appellant's argument. Again, by failing to raise this argument below, the appellant has waived the argument for appellate review.

■ The last issue presented by the appellant concerns recent legislative amendments to the statute under which the appellant was convicted. Effective March 13, 1999, the Legislature amended *W.Va.Code,* 17B–4–3(a) to remove the mandatory 48-hour jail sentence, and in fact to remove any jail sentence, for a first offense of driving on a suspended or revoked license. *See 1999 Acts of the Legislature,* ch. 194. The 1999 statute states, in pertinent part, that:

> [A]ny person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully suspended or revoked by this state or any other jurisdiction is, for the first offense, guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than five hundred dollars[.]

The appellant contends that the penalty provisions of the 1999 version of *W.Va.Code,* 17B–4–3 are applicable to his case by virtue of *W.Va.Code,* 2–2–8 [1923], which states (with emphasis added):

> Every motor vehicle ... shall be equipped with at least one tail lamp mounted on the rear, which, when lighted as hereinbefore required, shall emit a red light plainly visible from a distance of five hundred feet to the rear, provided that in the case of a train of vehicles only the tail lamp on the rearmost vehicle need actually be seen from the distance specified.

The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that *if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.*

The appellant contends that because the "penalty or punishment" imposed by the 1994 statute is "mitigated by the new law," he is entitled to choose to be sentenced under the new statute. We agree.

█ *W.Va.Code*, 2–2–8 [1923] establishes a general rule that the statute in effect at the time of the commission of an offense governs the character of the offense and, generally, the punishment prescribed thereby. *State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 9, 260 S.E.2d 820, 822 (1979); Syllabus Point 4, *State v. Wright*, 91 W.Va. 500, 113 S.E. 764 (1922). The purpose of the statute was to correct the problems caused by the common law doctrine of abatement, "under which the repeal of a criminal statute, without the inclusion by the Legislature of a specific savings clause, operated as a discharge from criminal liability of all persons who had committed offenses under the old law and had not been tried prior to the date of the repeal." *State ex rel. Arbogast v. Mohn*, 164 W.Va. at 10, 260 S.E.2d at 823. The statute "operates to preserve prosecution of offenses committed under a repealed statute which have not reached final judgment." *Id.*

█ However, when the penalty established by a criminal statute is amended in a manner favorable to a defendant, *W.Va. Code*, 2–2–8 specifically allows a defendant to choose to be sentenced in accordance with the new penalty. We have stated:

The statute in force at the time of the commission of an offense governs the character of the offense, and generally the punishment prescribed thereby, unless, as

provided by our statute, the defendant elects to be punished as provided in an amendment thereof.

Syllabus Point 4, *State v. Wright*, 91 W.Va. 500, 113 S.E. 764 (1922). We restated this principle in *State ex rel. Arbogast v. Mohn*, where we held at Syllabus Point 2:

When a general savings statute specifically provides for the application of mitigated penalties upon the election of the affected party, he is entitled to choose the law under which he wishes to be sentenced. W.Va.Code § 2–2–8.

█ We recently reaffirmed this principle in *State v. Easton*, 203 W.Va. 631, 510 S.E.2d 465 (1998) where we held at Syllabus Point 6:

If the amended penal statute provides lesser penalties for the same conduct proscribed by the statute in effect at the time of the offense, the defendant shall have an opportunity to elect under which statute he/she wishes to be sentenced, consistent with the statutory mandate contained in W.Va.Code § 2–2–8 (1923) (Repl.Vol.1994) and our prior directive set forth in Syllabus point 2 of *State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 260 S.E.2d 820 (1979).

The 1999 legislative amendments to *W.Va. Code*, 17B–4–3(a) did not alter the character of the offense committed by the appellant. The amendments only mitigated the penalty or punishment for the offense. We therefore conclude that, under *W.Va.Code*, 2–2–8, the appellant may elect to be sentenced under either *W.Va.Code*, 17B–4–3(a) [1994] or 17B–4–3(a) [1999].

Because the appellant was sentenced by the circuit court under the 1994 version of *W.Va.Code*, 17B–4–3(a), we believe that the sentencing order must be set aside and the case remanded. Upon remand, the circuit court must resentence the appellant, and allow the appellant to elect which version of *W.Va.Code*, 17B–4–3(a) will govern his sentencing.

## III.

For the reasons set forth above, we affirm the circuit court's conviction of the appellant

for the offense of driving on a suspended license. However, we reverse the circuit court's order of August 10, 1998 sentencing the appellant under the 1994 version of W.Va.Code, 17B–4–3(a), and remand the case for resentencing of the appellant.

Affirmed in part, Reversed in part, and Remanded.

Judge FRED RISOVICH, II, sitting by temporary assignment.

Justice SCOTT did not participate in the decision of the Court.

DAVIS, Justice, concurring in part, dissenting in part:

(Filed Dec. 10, 1999)

This case had a straightforward resolution. The defendant was duly convicted of a first offense, driving on a suspended license. He was sentenced to 48 hours incarceration and fined $250.00, as was authorized under the statute in effect on the date of the offense. The majority affirmed the conviction and fine. I have no argument with that aspect of the majority opinion and therefore concur in that part of the opinion.

However, the majority opinion has gone one step further by reversing the incarceration sentence. The reversal is based on the grounds that W. Va.Code § 2–2–8 permits the defendant to elect between the penal statute in force on the date of his offense and the penal statute in force after sentencing. On this issue, I must depart from the majority and its interpretation of W. Va.Code § 2–2–8. In my judgment, the unwarranted and unprecedented interpretation given by the majority to W. Va.Code 2–2–8 sets the stage for voiding countless criminal sentences.

### W.Va.Code § 2–2–8 Applies Only When A Final Judgment Is Rendered After the Effective Date Of A New Statute

The circuit court entered a final judgment against the defendant on August 10, 1998. On the date that the final judgment order was entered, W. Va.Code § 17B–4–3(a) authorized the punishment to be imposed by the circuit court. However, in 1999, the Legislature amended W. Va.Code § 17B–4–3(a) to remove the incarceration punishment. The amended version of the statute took effect on April 7, 1999.

In this appeal, the defendant argued that he had a "right" to be sentenced under the new version of the statute.[1] The majority has agreed with the defendant. In doing so, the majority concluded that under W. Va. Code § 2–2–8, the Legislature provided defendants with the "right" to make an election between new and repealed penal statutes. Any fair reading of the statute clearly indicates that the defendant's case does not fall within the meaning of W. Va. 2–2–8, which reads:

> The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to *any judgment pronounced after it has taken effect.*

(Emphasis added)

As I read this statute, a defendant has a right to elect between being sentenced under a new or repealed statute *only when* the sentence is imposed "after" the new law has taken effect. The majority has taken this simplistic and unambiguous statute and ruled that a defendant has a right to elect between being sentenced under a new or repealed statute, even though the new statute took effect after the judgment was rendered. This twisted interpretation of the statute now permits every defendant, currently sentenced and incarcerated, to seek resentencing under any new and more lenient statute enacted after his or her sentence has been imposed. This is absolutely illogical. "To give [a] new

---

1. The most obvious flaw in this argument is that the circuit court could not sentence the defendant under the new statute, because the new statute was not in existence at the time of sentencing.

statute retroactive effect in these circumstances would stretch the concept of retroactivity beyond any known case or principle." *White v. Gosiene,* 187 W.Va. 576, 582, 420 S.E.2d 567, 573 (1992). The real difficulty with the majority's decision is that we recently explained the full extent of the retroactive application of this statute in syllabus point 6 of *State v. Easton,* 203 W.Va. 631, 510 S.E.2d 465 (1998) (Davis, C.J.):

> When a criminal defendant is convicted of a crime and the penal statute defining the elements of the crime and prescribing the punishment therefor is repealed or amended *after his/her conviction of the crime but before he/she has been sentenced therefor,* the sentencing court shall apply the penalties imposed by the statute in effect at the time of the offense, except where the amended penal statute provides for lesser penalties. If the amended penal statute provides lesser penalties for the same conduct proscribed by the statute in effect at the time of the offense, the defendant shall have an opportunity to elect under which statute he/she wishes to be sentenced, consistent with the statutory mandate contained in W. Va.Code § 2–2–8 (1923) and our prior directive set forth in Syllabus point 2 of *State ex rel. Arbogast v. Mohn,* 164 W.Va. 6, 260 S.E.2d 820 (1979).

(Emphasis added.)

This Court has never interpreted W. Va. Code 2–2–8 as permitting a defendant to elect between new and repealed sentencing statutes when the new statute took effect after his or her sentence was imposed. *See State ex rel. Arbogast v. Mohn,* 164 W.Va. 6, 11, 260 S.E.2d 820, 823–824 (1979) ("W.Va. Code § 2–2–8 clearly provides for the application of mitigated penalties to *a judgment rendered after the effective date of a statutory amendment* upon the election of the party affected."). *See e.g., State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981); *Gibson v.*

*Bechtold,* 161 W.Va. 623, 245 S.E.2d 258 (1978); *State v. Gregory,* 143 W.Va. 878, 105 S.E.2d 532 (1958); *State v. Mason,* 141 W.Va. 217, 89 S.E.2d 425 (1955); *State v. McClung,* 116 W.Va. 591, 182 S.E. 865 (1935).[2] The majority decision in this case has opened a pandora's box by completely disregarding the existing law of this State. I am, therefore, compelled to respectfully dissent from this aspect of the majority decision.

---

**2.** Obviously, the spurious argument can be made that a case does not become final until the appellate decision is rendered or the appeal period has expired. We rejected this argument in *State ex rel. Miller v. Bordenkircher,* 166 W.Va. 169, 172, 272 S.E.2d 676, 678 (1980) (per curiam), wherein we stated:

> To now conclude that petitioner is entitled to be set free, when he committed the crime of which he was convicted over twenty-four months before the new law went into effect *and was convicted and sentenced some fifteen months before the old law was repealed,* flies in the face of reason.

(Emphasis added.)