IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

FILED

**March 24, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-1446

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

WILLIAM B. SHINGLETON,
Defendant Below, Petitioner.

Appeal from the Circuit Court of Putnam County
Honorable Phillip M. Stowers, Judge
Criminal Action No. 12-F-42

AFFIRMED

Submitted: February 23, 2016
Filed: March 24, 2016

Duane C. Rosenblieb, Jr., Esq.          Patrick Morrisey, Esq.
Charleston, West Virginia              Attorney General
Counsel for the Petitioner             David A. Stackpole, Esq.
                                       Assistant Attorney General
                                       Benjamin F. Yancey, III, Esq.
                                       Assistant Attorney General
                                       Charleston, West Virginia
                                       Counsel for the Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court

**SYLLABUS BY THE COURT**

1.  "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996).

2. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

3.  "The application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error." Syl. Pt. 1, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).

4. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when

i

the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

5. "Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syl. Pt. 6, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006).

6. "[A] testimonial statement is, generally, a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Syl. Pt. 8, in part, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006).

7. "In order to qualify as an excited utterance under W.Va.R.Evid. 803(2): (1) the declarant must have experienced a startling event or condition; (2) the declarant must have reacted while under the stress or excitement of that event and not from reflection and fabrication; and (3) the statement must relate to the startling event or condition." Syl. Pt. 7, *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995).

8. "A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syl. Pt. 7, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992).

9. "The analysis of whether a criminal defendant may be separately convicted and punished for multiple violations of a single statutory provision turns upon the legislatively-intended unit of prosecution." Syl. Pt. 4, *State v Goins*, 231 W.Va. 617, 748 S.E.2d 813 (2013).

10. "The defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." Syl. Pt. 6, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

11. "This Court will not reverse the denial of a request for a *de novo* resentencing hearing on a trial court's correction of a sentence under Rule 35(a) absent a showing of an abuse of discretion." Syl. Pt. 2, in part, *State v. Tex B.S.*, 236 W.Va. 261, 778 S.E.2d 710 (2015).

12. "When a criminal defendant is convicted of a crime and the penal statute defining the elements of the crime and prescribing the punishment therefor is repealed or amended after his/her conviction of the crime but before he/she has been sentenced therefor,

the sentencing court shall apply the penalties imposed by the statute in effect at the time of the offense, except where the amended penal statute provides for lesser penalties. If the amended penal statute provides lesser penalties for the same conduct proscribed by the statute in effect at the time of the offense, the defendant shall have an opportunity to elect under which statute he/she wishes to be sentenced, consistent with the statutory mandate contained in W. Va. Code § 2-2-8 (1923) (Repl. Vol. 1994) and our prior directive set forth in Syllabus point 2 of *State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 260 S.E.2d 820 (1979)." Syl. Pt. 6, *State v. Easton*, 203 W.Va. 631, 510 S.E.2d 465 (1998).

13. The statutory penalty in effect at the time of a defendant's criminal conduct shall be applied to the defendant's conviction(s). Where a statutory amendment mitigating punishment becomes effective prior to sentencing, West Virginia Code § 2-2-8 (2013) allows a defendant to seek application of the mitigated punishment before the trial court. Any correction of sentence pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure shall be in accordance with the statutory penalty in effect at the time of the original sentencing. Insofar as the decision in *State v. Cline*, 206 W.Va. 445, 525 S.E.2d 326 (1999), is inconsistent with this holding, it is expressly overruled.

LOUGHRY, Justice:

The petitioner, William B. Shingleton, appeals the January 21, 2014, second amended sentencing order of the Circuit Court of Putnam County through which he was sentenced to a total period of incarceration of seventeen years for his convictions on twenty counts of Possession of Material Visually Portraying a Minor Engaged in Sexually Explicit Conduct in violation of West Virginia Code § 62-8C-3 (1988) and his related recidivist conviction under West Virginia Code §§ 61-11-18 and -19 (2014). Seeking to set aside his convictions and sentences, the petitioner challenges the admission of the State's medical expert's opinion testimony; the sufficiency of the State's evidence to convict him; the admission of testimony regarding a flash drive; and the entry of the jointly proposed second amended sentencing order outside his presence. He also argues that the second amended sentencing order increased his sentence in violation of his constitutional rights.[1] Following a careful review of the briefs, the arguments of counsel, the record submitted, and the applicable law, this Court finds no reversible error and affirms the petitioner's convictions and sentencing.

---

[1]Through this Court's administrative order entered on February 4, 2015, the parties were directed to address whether the petitioner "may elect to be sentenced under the revised version of W.Va. Code § 61-8C-3 that [effective June 6, 2014] mitigated the punishment for possessing multiple images of materials depicting minors engaged in sexually explicit conduct." Although the petitioner assigned this issue as error in his notice of appeal filed on June 5, 2015, he did not discuss it in his appellate brief. The State did address the issue in its appellate brief. We recognize a need to clarify our law regarding sentencing when a statutory penalty is mitigated and will do so in section F., *infra*.

1

## I. Facts and Procedural Background

In April of 2010, the petitioner's then ten-year-old son, J.S.,[2] went to the home shared by his uncle, Larry "Wayne" Henson, and his uncle's girlfriend, Lori Gil. While there, J.S. gave a flash drive[3] to Ms. Gil's daughter, L.C.,[4] asking her to load music onto it. When L.C. inserted the flash drive into her computer, files "popped up" with pictures that she did not think they were meant to see. L.C. stated that J.S. "looked kind of scared," telling her that the flash drive "wasn't his" and that he had "accidentally grabbed his dad's" flash drive.[5]

L.C. called for her mother who, upon viewing the computer screen, sent J.S. home and asked Mr. Henson to come inside.[6] After viewing a picture of a topless girl on the laptop, Mr. Henson took the flash drive and left the house to "find a cop" because "the young girl" appeared to be "a little kid[.]" Mr. Henson found Putnam County Deputy Sheriff Chad Weaver in his cruiser at a nearby Go-Mart convenience store and gave the flash drive to him.

---

[2]Pursuant to Rule 40(e)(1) of the West Virginia Rules of Appellate Procedure, we will refer to the juvenile witnesses in this matter by their initials.

[3]In the parties' briefs and throughout the appendix record, the terms "flash" drive and "thumb" drive are used interchangeably. For purposes of this opinion, we will use the term "flash" drive.

[4]It appears that L.C. was approximately fourteen years old in April of 2010, as she was sixteen years old at the time of her testimony during the petitioner's trial in June 2012.

[5]Testimonial quotations have been taken from the transcript of the petitioner's trial, as contained in the appendix record, unless otherwise indicated.

[6]Mr. Henson had been mowing the yard.

2

Deputy Weaver viewed the files on the flash drive, which he described as "several pornographic images of females . . . [he] believe[d] to be under the age of 18." The deputy took statements from Mr. Henson and Ms. Gil and made a report. Deputy Weaver turned the investigation over to Sergeant Ryan Lockhart, a detective in the Crime Unit of the Putnam County Sheriff's Department.

Detective Lockhart obtained two search warrants: one to access the flash drive that Mr. Henson had given to Deputy Weaver and one for the petitioner's home. In executing the warrants, multiple computers and "removable media" were seized. These items were ultimately forwarded to the Federal Bureau of Investigation ("FBI") for analysis. The FBI identified child pornography on both the subject flash drive and a desktop computer with the username "Bill."[7]

On April 21, 2010, Detective Lockhart took a statement from the petitioner which was recorded.[8] In his statement, the petitioner described his regular use of a program, "Forte Agent," to download batches of file attachments to his computer. He explained that

---

[7]In his statement given to Detective Lockhart, which is discussed *infra*, the petitioner advised that he goes by the name "Bill."

[8]Although the appendix record filed by the petitioner did not contain a copy of this audio recording, the Court requested and obtained a copy of the recording from the petitioner's counsel. *See* R.A.P. 6(b) ("The Court, upon its own motion, may consider portions of the record other than those provide by the parties."). A transcript of the audio recording, while not admitted into evidence, was provided to the jury under a cautionary instruction to aid it in understanding what was being said in the audio recording. The appendix record contains a copy of this transcript, which the Court has relied upon for the same purpose.

through this program, sometimes as many as 10,000 pornographic files were downloaded to his computer overnight while he sleeps;[9] that he would open and sort through the file attachments about once a week; and that he would delete any images that appeared to depict underage individuals. The petitioner admitted that although he might see "6 pictures that you know you shouldn't have" each week, he continued to use this program to access pornography. The petitioner further stated that he does "tend towards, sometimes, the younger stuff," but that he does not "search for underage girls . . . just young looking girls[.]" He explained that while he does not look for "pictures of little girls," he does "get 'em," and that he "like[d] young looking girls" because women his age[10] "look like they're 60." When Detective Lockhart asked the petitioner what he meant by "little girls," the following exchange took place:

> Detective: Okay well, define little girl for me.
> Petitioner: Well, undeveloped you know.
> Detective: Okay like what age?
> Petitioner: Like, under 13, you know.
> Detective: Okay so, if, if you saw a picture of a 14 year old girl, would you keep it?
> Petitioner: I don't . . .
> Detective: Or a 16 year old girl?
> Petitioner: If I see large breasts and you know one with large breasts and like pubic hair and stuff, you know.
> Detective: Uh . . . huh.
> Petitioner: If the girl's attractive, I might keep the picture.

When questioned concerning his knowledge that he possessed child pornography, the following exchange took place:

---

[9]The petitioner described this as messages with files attached.

[10]The petitioner was forty-two years old at the time he gave this statement.

4

| | |
|---|---|
| Detective: | When you came to my office today?[11] |
| Petitioner: | Uh . . . huh. |
| Detective: | You knew that you had been looking at stuff you shouldn't have been looking at and that's why you're as nervous as you are. |
| Petitioner: | I knew that I had seen stuff that I was not supposed to be looking at . . . I have seen stuff. |

• • • •

| | |
|---|---|
| Detective: | You know that there's stuff on your computers that you shouldn't have. |
| Petitioner: | And I told you that. |

The petitioner also stated that any child pornography found on the computers seized from his home pursuant to the search warrant was downloaded by accident.

On March 6, 2012, the petitioner was indicted on twenty counts of Possession of Material Visually Portraying a Minor Engaged in Sexually Explicit Conduct in violation of West Virginia Code § 61-8C-3 (2010).[12]  All twenty counts were identical, with the exception of the number of each count.  Each count read as follows:

> Count No. One (1): that WILLIAM B. SHINGLETON, on the __ day of March 2010, in the said County of Putnam, committed the felony offense of "POSSESSION OF MATERIAL VISUALLY PORTRAYING A MINOR ENGAGED IN SEXUALLY EXPLICIT CONDUCT" in that he, the said William B. Shingleton, on the __ day of March, 2010, in said Putnam County, West Virginia, did unlawfully, feloniously and knowingly possess material visually portraying a minor engaging in sexually explicit conduct, against the peace

---

[11]The ensuing statements can be heard in the audio recording of the petitioner's statement that was admitted into evidence at trial, although they are not set forth in the transcript of the petitioner's statement that is a part of the appendix record.

[12]For purposes of this opinion, the year 2010 refers to the date of the bound volume of the West Virginia Code at the time of the petitioner's criminal conduct, convictions, and sentencing, which included all statutory amendments through 1988—the year the statute was last amended prior to its most recent amendment in 2014.

5

and dignity of the State, West Virginia Code, Chapter 61, Article 8C, Section 3[.][13]

The petitioner's jury trial was held in June 2012. Deputy Weaver testified regarding how he came to be in possession of the flash drive, and Detective Lockhart testified regarding his investigation in this matter. Through Detective Lockhart, the audio recording of the statement he took from the petitioner was admitted into evidence at trial.[14] Mr. Henson and Ms. Gil testified regarding their actions once the flash drive's contents were revealed to them, as described above.

L.C. testified at trial regarding the flash drive that was handed to her by the petitioner's son, J.S.; the images that appeared when she opened the flash drive on her computer; and the statements immediately made by J.S. that the flash drive "wasn't his" and that he had "accidentally grabbed his dad's" flash drive. A few questions and answers later, the petitioner objected to this earlier testimony on the basis of hearsay. The State responded

---

[13]The version of West Virginia Code § 61-8C-3 in effect at the time of the petitioner's prosecution and sentencing provided, as follows:

> Any person who, with knowledge, sends or causes to be sent, or distributes, exhibits, possesses or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not more than two years, and fined not more than two thousand dollars.

[14]*See supra* note 8.

that L.C.'s testimony fell within the present sense impression exception to the hearsay rule,[15] and the objection was overruled.[16] Although J.S. was subpoenaed and available to testify, neither the State nor the defense called him as a witness at trial.

Melinda Cash, an Information Technology Specialist Forensic Examiner with the FBI, testified for the State. Ms. Cash indicated that seventy to eighty percent of her cases involve child pornography. Regarding the instant matter, Ms. Cash testified that she examined the petitioner's computers and the subject flash drive that had been forwarded by the Putnam County Sheriff's Office. Explaining that every digital image of child pornography can be identified by "hash value,"[17] Ms. Cash stated that she found 127 images that were "suspected child porn erotica" on the desktop computer with the user name "Bill."[18] She further testified that forty-three images, which were found on both the desktop computer and the flash drive, were matched by their hash value with the hash values of known child pornography contained in a database known as the "DHS-ICE, National Child Victim

---

[15]*See infra* note 39. Although the West Virginia Rules of Evidence were substantially revised in 2014, we will apply the evidentiary rules in effect at the time of the petitioner's trial in 2012.

[16]During arguments on the petitioner's motion for judgment of acquittal following the close of evidence, the State also referred to J.S.'s statements to L.C. as excited utterances, another exception to the rule against hearsay. *See* W.V.R.E. 803(2) (2012), *infra*.

[17]Ms. Cash explained that "every digital media" will have a unique "hash," which she described as a "digital fingerprint." *See, e.g., United States v. Brown*, 701 F.3d 120, 128 n. 2 (4th Cir. 2012) ("A 'hash value' is a code that identifies an individual digital file as a kind of 'digital fingerprint.'").

[18]The petitioner told Detective Lockhart that he was the only person in his household who used his desktop computer and that it was password protected.

7

Identification Program" ("NCVIP"),[19] and nineteen of those images were matched with the FBI's NCVIP database.[20] Ms. Cash verified that the images were of actual children who had been reported to the NCVIP. Through Ms. Cash, twenty images depicting child pornography[21] were admitted into evidence as having been found on either the desktop computer with the username "Bill," the flash drive, or both.[22] Ms. Cash's examination of the desktop computer and flash drive revealed that the child pornography had been downloaded over a period of years.

Joan Phillips, M.D., testified for the State. Dr. Phillips, a board certified pediatrician, is the co-director of the Child Advocacy Center at the Charleston Area Medical Center in Charleston, West Virginia, as well as the clinical director of the hospital's Children's Services. Dr. Phillips was qualified as an expert in the field of pediatrics and child abuse and neglect. Having been previously disclosed in discovery as the State's expert

[19]*See* https://www.ice.gov/factsheets/predator (explaining that NCVIP was created by U.S. Immigration and Customs Enforcement "in partnership with the National Center for Missing & Exploited Children, the FBI, the U.S. Postal Inspection Service, the U.S. Secret Service, the Department of Justice, the Internet Crimes Against Children task forces and other agencies" as part of effort to combat sexual exploitation of children).

[20]*See* https://www.fbi.gov/foia/privacy-impact-assessments/cvip (stating that FBI's NCVIP database is designed to help identify child victims of sexual exploitation and explaining that it "serves as a repository for images depicting identified child victims").

[21]Ms. Cash testified that she had attached to each image its particular properties which showed the image's "original path and the dates created, modified and access date, the size of the files," and the fact that these twenty images had not been deleted. She also explained how to discern which images were on the hard drive of the desktop computer with the username "Bill,"on the subject flash drive, or on both.

[22]For purposes of establishing the chain of custody for the computers and flash drive, three other employees of the FBI also testified at trial.

8

"regarding the relative ages of the alleged children in the photographic images based on their developmental growth," Dr. Phillips testified regarding "Tanner staging," which she described as a "universally accepted model . . . which describes sexual development of children" using a scale of "I to V." Through Dr. Phillips, a description of Tanner staging published in "Harriet Lane," which is "considered sort of a pediatric bible that's published by John[s] Hopkins Medical," was admitted into evidence without objection. Utilizing the illustration of Tanner staging in "Harriet Lane," Dr. Phillips testified regarding the various stages of physical development in girls. She explained that for children under the age of fifteen, Tanner staging is "pretty determinative" of age. Having previously compared the twenty images admitted into evidence at trial with Tanner staging, Dr. Phillips gave her expert opinion that she had "[a]bsolutely . . . no hesitation in testifying that these children are under the age of 18," estimating all to be thirteen years of age or younger with some being nine years of age or younger. The petitioner did not object to Dr. Phillips' qualifications or testimony, nor was she cross-examined.

Following the State's case-in-chief, the petitioner's trial counsel gave his opening statement. Although counsel indicated that various witnesses would be called to testify, the defense rested without calling any witnesses. Thereafter, the trial court denied the petitioner's motion for a judgment of acquittal based on an insufficiency of the evidence.

On June 26, 2012, the jury returned its verdict finding the petitioner guilty on all twenty counts of the indictment. That same day, the State filed an information against the

9

petitioner alleging he was a recidivist and seeking a recidivist sentence under West Virginia Code § 61-11-18. The petitioner did not contest the factual allegations in the information regarding his twelve prior felony convictions of forgery in 1992, or his felony conviction of fraudulent schemes in 2009.

Following a pre-sentence investigation and report, a sentencing hearing was held on October 19, 2012, during which the petitioner and his counsel were afforded an opportunity to speak and present evidence. On that same day, the circuit court entered its order sentencing the petitioner to a total combined sentence of twenty years, as follows: a statutory determinate term of two years incarceration for each of the twenty counts on which he was convicted; the sentences for counts one through five to run consecutively to one another; the sentences for counts six through twenty to run concurrently; and a "determinant sentence of Ten (10) years for the charge of recidivist for all twenty counts herein for a combined total of ten (10) years" to be served consecutively to the other sentences. The circuit court also imposed a $40,000 fine ($2,000 for each of the twenty counts) and a twenty-five year term of supervised release upon the petitioner's release from incarceration.

On November 19, 2012, the petitioner, by counsel, filed a notice of appeal in this Court indicating his intent to challenge the legality of the recidivist enhancement. Thereafter, he filed a motion in the circuit court on December 12, 2012, seeking a "correction of illegal sentence" pursuant to Rule 35(a) of the West Virginia Rules of Criminal

Procedure.[23]  In this motion, the petitioner argued that only a single count could be enhanced under the recidivist statute, whereas the sentencing order imposed the recidivist sentencing on all twenty counts, and that the single count could only be enhanced five years, rather than the ten years imposed.  He further asserted that it was unclear whether the sentences for counts six through twenty were to be served concurrently to, or consecutively with, the consecutive sentences for counts one through five.  Lastly, the petitioner indicated that the circuit court had expressed its intent to suspend all but $5,000 of the $40,000 fine, yet this reduction did not appear in the sentencing order.

The petitioner's motion prompted a second sentencing hearing, which was held by the circuit court on March 22, 2013.  Thereafter, the trial court entered an amended sentencing order on May 3, 2013, through which it reduced its earlier ten-year recidivist sentence by imposing a "determinant sentence of Seven (7) years for the charge of recidivist for all twenty counts herein for a combined total of Seven (7) years."  This amended sentencing order clarified that $35,000 of the $40,000 fine was suspended, but did not address the petitioner's question of whether the sentences imposed on counts six through twenty were to be served consecutively to, or concurrently with, the sentences imposed on counts one through five.

---

[23]*See* W.Va. R. Crim. P. 35(a) ("The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time period provided herein for the reduction of sentence.").

On October 30, 2013, the petitioner filed an appellate brief in this Court, arguing that the amended sentencing order was illegal because it imposed a seven-year recidivist sentence "for all twenty counts," which could be interpreted as imposing that recidivist sentence on each of the petitioner's twenty convictions, rather than just as to a single count. Thereafter, the State filed a motion in this Court on January 6, 2014, seeking to hold the appeal in abeyance pending resolution of the sentencing issue in the circuit court. By order entered on January 27, 2014, this Court granted the State's motion.

During this same time, the petitioner filed a pro se motion in the circuit court pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure in which he challenged, *inter alia*, his recidivist sentencing. Soon thereafter, the parties, by counsel, jointly submitted a proposed second amended sentencing order to the circuit court seeking its entry.

On January 21, 2014, the jointly proposed second amended sentencing order[24] was adopted and entered by the circuit court without holding a hearing. In this order, the trial court expressed its intent to impose an aggregate period of seventeen years incarceration, the

---

[24]The trial court recounted in this order that the parties' counsel had notified the court that "certain aspects of [the May 3, 2013] order had caused confusion" and that "the parties jointly submitted a proposed [second] amended sentencing order to the Court[,]" which the court adopted.

12

same period it had imposed in its May 3, 2013, amended sentencing order. The court also explained that it was clarifying and correcting the confusion voiced by the parties' counsel regarding the recidivist sentencing imposed in the first amended sentencing order. Accordingly, the trial court imposed "a determinant sentence of Five (5) years for the charge of recidivist for Count One[,]" which was in accordance with the recidivist statute. Because this reduced the overall sentence by two years, the court ordered the sentences on counts one through *six*, rather than counts one through *five*, to be served consecutively to each other, and the sentences on counts *seven* through twenty, rather than *six* through twenty, be served concurrently to one another *and concurrently with*[25] the sentences for counts one through *six*, all of which resulted in a combined total sentence of seventeen years, as the court intended.

On February 2, 2014, the petitioner filed a pro se notice of appeal in this Court alleging eight additional assignments of error. Subsequently, the motion of the petitioner's counsel to withdraw was granted, and new appellate counsel was appointed. There has been full briefing by the parties, and this matter is now ripe for decision.

## II. Standard of Review

---

[25]This provision also answered the petitioner's question raised in his first Rule 35(a) motion regarding the concurrent and consecutive sentencing, which had not been addressed in the first amended sentencing order.

The petitioner has asserted several assignments of error. Generally, in reviewing a circuit court's decision, we apply a three-part standard of review:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

Syl. Pt. 2, *State v. Jessie*, 225 W.Va. 21, 689 S.E.2d 21 (2009). Further, "[t]he Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W.Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)). In addition, "[w]here the issue on an appeal from the circuit court . . . involv[es] an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Because the errors assigned by the petitioner involve additional and varying standards of review, we will address those specific standards below as we proceed to determine whether the petitioner is entitled to relief from his convictions.

## III. Discussion

14

The petitioner seeks to overturn his convictions on several grounds, including evidentiary errors at trial, the sufficiency of the State's evidence to convict, and errors related to his sentencing. We will address each of these assignments of error in turn.

**A. Expert Testimony**

The petitioner asserts that the trial court failed in its "gatekeeper" role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), when it allowed Dr. Phillips to give her expert opinion concerning the ages of the children depicted in the twenty images based on Tanner staging. Citing professional publications in his appellate brief, the petitioner questions the validity of the Tanner scale to estimate the chronological age of children. The State responds that not only did the petitioner fail to challenge Dr. Phillips' qualifications or testimony below, the circuit court was not required to hold a *Daubert* hearing or limit Dr. Phillips' unchallenged opinion testimony *sua sponte*. The State further argues that this alleged error is not saved by a "plain error" analysis given the absence of any evidence in the record that would call into question the validity of Dr. Phillips' expert opinions.

The petitioner asks this Court to find error in the admission of expert testimony to which he raised no objections and which was given by a witness he did not cross-examine. As a general matter, these failures remove this issue from the Court's consideration.

15

"'Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.' Syllabus Point 1, *State Road Commission v. Ferguson*, 148 W.Va. 742, 137 S.E.2d 206 (1964)." Syl. Pt. 3, *O'Neal v. Peake Operating Co.*, 185 W.Va. 28, 404 S.E.2d 420 (1991). Indeed, "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996).

In the absence of any challenge to Dr. Phillips' testimony during trial, under *Daubert* or otherwise, the sole means to address this issue is through a "plain error" analysis. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Although the petitioner has not asked this Court to invoke a "plain error" analysis, "[the] application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error." Syl. Pt. 1, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998). The State asserts that there was no plain error in the admission of Dr. Phillips' expert opinion testimony. We agree.

16

The petitioner had ample opportunity to prepare for Dr. Phillips' testimony as she had been disclosed by the State as its expert concerning "the relative ages of the alleged children in the photographic images based on their developmental growth." In the stark absence of any challenge to Dr. Phillips' qualifications and opinion testimony at trial, the petitioner argues, without any supporting legal authority, that the trial court should have held a *Daubert* hearing *sua sponte*. Certainly, this Court has never imposed such a blanket requirement on trial courts, and our research reveals that other courts have also declined to impose such a duty.

For example, in *Chapman v. State*, 18 P.3d 1164 (Wyo. 2001), the defendant argued that a trial court, "in its gatekeeping role, is required to make a determination of the admissibility of expert testimony prior to its admission regardless of whether an objection has been made—in effect, arguing that trial courts are always required to hold *sua sponte Daubert* hearings whenever expert testimony is proposed." *Id.* at 1174. The court, however, declined to impose such a requirement, explaining, as follows:

> First, even where a *Daubert* hearing has been properly requested, trial courts exercise "discretionary authority . . . to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." *Seivewright v. State*, 7 P.3d 24, 30 (Wyo. 2000) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 at 1176, 143 L.Ed.2d 238 (1999)). In addition, although we agree that, as gatekeepers of expert testimony, judges must always perform some form of reliability analysis, we decline to "shackle the district court with a mandatory and

17

explicit" reliability proceeding. *Hoult v. Hoult*, 57 F.3d 1, 5 (1st Cir. 1995). Instead, like the First Circuit, we "assume that the district court performs such an analysis *sub silencio* throughout the trial with respect to all expert testimony." *Id.*

*Chapman*, 18 P.3d at 1174; *see also United States v. Bedford*, 628 F.3d 1232, 1236 (10th Cir. 2010) (noting that "trial court was not obligated to act *sua sponte* [under *Daubert* ]without an objection from [defense counsel]"); *Ferry v. Com.*, 234 S.W.3d 358, 362 (Ky. 2007) (citing *Tharp v. Com.*, 40 S.W.3d 356, 368 (Ky. 2000)) (finding "trial court is not required to conduct [a *Daubert*] hearing *sua sponte*").

In the case at bar, even if the circuit court had held a *Daubert* hearing, *sua sponte*, the record is devoid of any evidence upon which the court could have undertaken a *Daubert* analysis—not even a cross-examination of Dr. Phillips that might have provided fodder for a *Daubert* challenge. Moreover, had the petitioner utilized the journal articles cited in his appellate brief to challenge Dr. Phillips' opinion testimony at trial, such would not necessarily have warranted the exclusion of Dr. Phillips' testimony. In fact, our research reveals that in other jurisdictions, medical experts have testified at trial using Tanner staging to estimate the chronological age of children. *See United States v. Hilton*, 386 F.3d 13 (1st Cir. 2004) (doctor testified regarding Tanner scale and estimated that nine images "represented children at various stages of development, ranging from pre-school to young teen"); *Beaver v. State*, 767 S.E.2d 503, 504 n.3 (Ga. Ct. App. 2014) (pediatrician testified for State as expert in determining children's ages using Tanner scale and gave her opinion

18

that children depicted in materials ranged in age from six years to sixteen years); *State v. Zabrinas*, 24 P.3d 77, 80 (Kan. 2001) (advanced practice nurse testified using Tanner scale and estimated that children in images ranged from five to fourteen years of age); *State v. Schroeder*, 613 N.W.2d 911, 914 (Wis. Ct. App. 2000) (medical expert testified and estimated ages of children in pictures found on defendant's computer using Tanner scale).

Under Rule 702 of the West Virginia Rules of Evidence, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." W.V.R.E. 702 (2012). Here, Dr. Phillips was qualified in the fields of pediatrics and child abuse and neglect, *without objection*, and she utilized "Harriet Lane," a "sort of a pediatric bible," to explain "Tanner staging" and to estimate the children's ages in the twenty images admitted into evidence at trial—again, *without objection*.[26] Once Dr. Phillips' unchallenged testimony was received into evidence, it was left to the jury to evaluate that testimony and give it the weight to which it was entitled. *See Moore v. St. Joseph's Hosp. of Buckhannon, Inc.*, 208 W.Va. 123, 126, 538 S.E.2d 714, 717 (2000) (citation omitted) ("'the jury has the right to weigh the testimony of all witnesses, experts and otherwise, and

---

[26]In addition to Dr. Phillips' testimony, FBI analyst Melinda Cash testified that the twenty images contained child pornography.

. . . the jury is to give only as much weight and credit to expert testimony as the jury deems it entitled to when viewed in connection with all the circumstances'"). Accordingly, we find no plain error in the admission of Dr. Phillips' expert testimony at trial.

## B. Sufficiency of the evidence to prove intent to possess the images

The petitioner asserts that although the State proved that the children depicted in the twenty images were actual children, the State failed to prove that he intended to possess those images. He asserts that the version of West Virginia Code § 61-8C-3 in effect at the time of his prosecution did not contain a clear scienter[27] requirement even though it included the language "with knowledge." Acknowledging that the statutory words "with knowledge" may be equated with the statute's current terminology, "knowingly," the petitioner nonetheless argues that West Virginia Code § 61-8C-3 (2010) did not contain the current statutory language: "electronically access[] with intent to view . . . any material portraying a minor engaged in any sexually explicit conduct[.]"[28] Although the petitioner concedes that he knowingly used a program to download batches of file attachments containing pornography to his computer, he argues that the State failed to prove that he knew that the downloads contained digital images of minors engaged in sexually explicit conduct,

[27]"Scienter" is defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act . . . the fact of an act's having been done knowingly . . . ." Black's Law Dictionary 1547 (10th ed. 2009).

[28]West Virginia Code § 61-8C-3, as amended in 2014, is quoted in full in section F., *infra*.

or that it was his intent to acquire such images. The petitioner further argues that other than his admission to Detective Lockhart that he used the flash drives that had been seized from his home,[29] there was little other evidence other than his son's statements to tie ownership of the subject flash drive to him.

Expressing a contrary view, the State asserts that the version of West Virginia Code § 61-8C-3 in effect at the time of the petitioner's criminal conduct, trial, and convictions[30] contained a scienter requirement that the sending, distribution, exhibition, possession, display, or transportation of "any material visually portraying a minor engaged in any sexually explicit conduct" be done "with knowledge." The State maintains that its evidence at trial was sufficient for the jury to convict, including that the petitioner knowingly downloaded images from web sites that he knew would include child pornography; his admission to Detective Lockhart that he was looking for images of "young looking girls;" and the twenty pictures of child pornography found on his computer and flash drive.

We begin our analysis by recognizing that

> [a] criminal defendant challenging the sufficiency of the
> evidence to support a conviction takes on a heavy burden. An
> appellate court must review all the evidence, whether direct or

---

[29]The petitioner told Detective Lockhart that his wife also used the flash drives for school.

[30]*See supra* note 13.

circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Bearing these precepts in mind, we readily conclude that the State's evidence was sufficient to convict.

Although the petitioner argues that his "knowledge" only extended to his utilization of a program to download thousands of pornographic images to his computer, he also told Detective Lockhart that he might see "6 pictures that you know you shouldn't have" each week, yet he continued to use this program to access pornography. In short, the State's evidence clearly indicated that the petitioner knew that he was regularly downloading a certain amount of child pornography. Further, when Detective Lockhart asked the petitioner whether he would keep a photo of a fourteen or a sixteen year old girl,[31] the petitioner answered that he might if she had "large breasts and like pubic hair and stuff" and "if the girl's attractive." Although the petitioner told Detective Lockhart that he would periodically

---

[31]For purposes of West Virginia Code § 61-8C-3, a "minor" is defined as "any child under eighteen years of age." W.Va.§ 61-8C-1(a) (2014). This was also the statutory definition at the time of the petitioner's trial.

22

sort the images and delete those of "little girls," the testimony of the FBI analyst Melinda Cash and Dr. Phillips proved otherwise.

Through Ms. Cash's testimony, the State was able to prove that the petitioner had manipulated the subject twenty images of child pornography by saving and transferring the images to "folders" on his computer, or to the flash drive, or both. She further explained how she determined when these twenty images were placed on the computer and/or the flash drive.[32] Importantly, Ms. Cash testified that none of these twenty images of child pornography had been deleted. Further, Dr. Phillips had no hesitancy in expressing her expert opinion that the girls in the twenty images were all under eighteen years of age. In fact, she further opined that all were thirteen years of age or younger with some estimated to be nine years of age or younger.

Viewing all of the evidence in the light most favorable to the prosecution,[33] we conclude that the State's evidence was sufficient for the jury to find that the petitioner, with knowledge, intentionally possessed the twenty images of minors engaged in sexually explicit conduct in violation of West Virginia Code § 61-8C-3 (2010).

---

[32]Ms. Cash testified that one of the twenty images was placed on the flash drive in 2006. During trial, the defense theory was that the images had been placed on the flash drive by the petitioner's son, J.S. However, in 2006, J.S. would have been just six years old.

[33]*Guthrie*, 194 W.Va. 657, 461 S.E.2d 163, syl. pt. 3, *supra*.

23

## C. Hearsay/Confrontation Clause

The petitioner next asserts that he was denied his constitutional right to a fair trial when the trial court allowed the State to present hearsay testimony in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution.[34] Rather than calling J.S., who was under subpoena and available to testify, to the witness stand, the petitioner argues that the State chose to prove an element of the crime–possession–through L.C.'s hearsay testimony that J.S. said the flash drive belonged to his father. He also asserts the circuit court erred in overruling his hearsay objection to L.C.'s testimony under the present sense impression exception to the hearsay rule, adding that the statements lacked inherent reliability given the ages of L.C. and J.S.[35]

The State responds that the spontaneous statements made by J.S. when L.C. opened the flash drive on her computer and the pornography appeared fell under both the present sense impression and excited utterance exceptions to the rule against hearsay.[36]

---

[34]*See* U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him[.]").

[35]*See supra* note 4.

[36]Perhaps attributable to the brevity of the petitioner's Confrontation Clause argument in his appellate brief, the State did not address it.

The petitioner did not assert a Confrontation Clause objection to L.C.'s testimony during trial. Consequently, he has waived the right to raise the issue on appeal. *State v. Reed*, 223 W.Va. 312, 322, 674 S.E.2d 18, 28 (2009) (finding defendant waived his right to raise Confrontation Clause issue on direct appeal where he failed to raise timely objection to challenged testimony at trial). Even if we were to invoke a plain error analysis[37] in this regard, we find there is no constitutional violation.

Under "*Crawford v. Washington*, 541 U.S. 36, 124 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syl. Pt. 6, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006). As explained in *Mechling*, "a testimonial statement is, generally, a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Mechling*, 219 W.Va. at 369, 633 S.E.2d at 314, syl. pt. 8, in part.

---

[37]*See Myers*, 204 W.Va. at 453, 513 S.E.2d at 680, syl. pt. 1, *supra*.

25

Clearly, the statements made by ten-year-old J.S. to L.C. regarding the flash drive belonging to his father were not "testimonial" as they were not made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* Even if we were to assume, *arguendo*, that J.S.'s statements were testimonial, their admission was harmless given the State's other evidence at trial. In his statement to Detective Lockhart, the petitioner never stated that the flash drive was not his. Further, FBI analyst Melinda Cash testified that some of the same child pornography was found on both the flash drive and the petitioner's desktop computer with the username "Bill." Accordingly, we find no violation of either *Crawford* or *Mechling*.

We now turn to the issue that was preserved below: the petitioner's hearsay objection to L.C.'s testimony regarding J.S.'s statements made when the flash drive was opened. In this regard, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

As indicated above, L.C. testified at trial that J.S. handed her a flash drive, asking her to download music onto it and, when she inserted the flash drive into her computer, files "popped up" with pictures that she did not think they were meant to see. She described J.S. in that moment as "look[ing] kind of scared" as he told her that the flash drive

26

"wasn't his"—that he had "accidentally grabbed his dad's" flash drive. The petitioner

objected to this testimony on the basis of hearsay.[38] The State responded that the testimony

fell within the present sense impression exception to the hearsay rule,[39] and the objection was

overruled. The State later argued in opposition to the petitioner's motion for judgment of

acquittal that J.S.'s statements were excited utterances.[40]

> In determining admissibility of evidence under the excited utterance exception
> to the rule against hearsay, the Court has set forth the factors to be considered:

> In order to qualify as an excited utterance under W.Va.
> R. Evid. 803(2): (1) the declarant must have experienced a
> startling event or condition; (2) the declarant must have reacted
> while under the stress or excitement of that event and not from
> reflection and fabrication; and (3) the statement must relate to
> the startling event or condition.

---

[38]*See* W.V.R.E. 801(c) (2012) ("'Hearsay. — "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

[39]*See* W.V.R.E. 803(1) (2012) ("Present Sense Impression. — A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.").

[40]*See* W.V.R.E. 803(2) (2012) ("Excited Utterance. — A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

Syl. Pt. 7, *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995).  Upon application of these precepts, it is clear that the challenged testimony fell within the excited utterance exception to the rule against hearsay.[41]

The statements made by J.S. when L.C. opened the flash drive and the pornography was displayed were clearly a spontaneous reaction to this startling and disturbing event.  Without sufficient time to reflect and make a conscious misrepresentation, J.S. immediately stated the flash drive was not his and that he had accidentally grabbed his father's flash drive.  Accordingly, we find no error in the trial court's discretionary decision to overrule the petitioner's hearsay objection.

### D.  Double Jeopardy

In addressing the petitioner's double jeopardy arguments, we note that our review is plenary: "a double jeopardy claim [is] reviewed *de novo*."  Syl. Pt. 1, in part, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996).  As this Court has previously explained:

---

[41]Having determined that L.C.'s testimony concerning J.S.'s statements was admissible at trial as an excited utterance under Rule 803(2), we find it unnecessary to determine whether this testimony would also be admissible as a present sense impression under Rule 803(1).

28

"The purpose of the Double Jeopardy Clause[42] is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Syl. Pt. 3, *Sears*, 196 W.Va. 71, 468 S.E.2d 324. "'The defense of double jeopardy may be waived [however] and the failure to properly raise it in the trial court operates as a waiver.'" *State v. McGilton*, 229 W.Va. 554, 558, 729 S.E.2d 876, 880 (2012) (quoting *State v. Carroll*, 150 W.Va. 765, 769, 149 S.E.2d 309, 312 (1966)).

*State v. Lewis*, 235 W.Va. 694, 701, 776 S.E.2d 591, 598 (2015) (footnote added). We will address the petitioner's double jeopardy arguments, in turn, below.

### 1. "Unit of Prosecution"

The petitioner asserts a double jeopardy challenge directed to the sufficiency of the State's evidence against him. Arguing that the "unit of prosecution" is "any material" under West Virginia Code § 61-8C-3 (2010),[43] irrespective of the number of images, the petitioner asserts insufficiency in the State's evidence to prove multiple instances of possession of material depicting children engaged in sexually explicit conduct. He contends

---

[42]The Fifth Amendment to the United States Constitution provides, in part, that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb[.]" The Fifth Amendment is applied to the states through the Fourteenth Amendment. *See State v. McGilton*, 229 W.Va. 554, 560 n.8, 729 S.E.2d 876, 882 n.8 (2012) ("The Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States is applied to the states by the Fourteenth Amendment."). Parallel language is found in article III, section 5 of the West Virginia Constitution, which provides that no person in any criminal case shall "be twice put in jeopardy of life or liberty for the same offence."

[43]West Virginia Code § 61-8C-3(b) (2014) is quoted, in full, in section F., *infra*.

29

that the twenty images–one for each count of the indictment–were collectively "any material" such that the State proved only a single instance of possession. In this regard, the petitioner asserts that Detective Lockhart's trial testimony reflects that he possessed all twenty images at one particular time in March 2010 such that he should only have been charged with one possession under West Virginia Code § 61-8C-3 (2010). Accordingly, the petitioner argues that his sentencing on twenty counts constitutes multiple punishments for the same offense in violation of double jeopardy, and that he should be resentenced on a single count of violating West Virginia Code § 61-8C-3 (2010).

The State counters that the petitioner's focus on the statutory words "any material" in West Virginia Code § 61-8C-3 (2010) for his double jeopardy argument is misplaced. Rather than referencing quantity, the State contends that "any material" refers to the medium on which the image is contained, such as a photograph, a video, a compact disc, etc. The State further argues that the statutory language in West Virginia Code § 61-8C-3 at the time of the petitioner's conduct and convictions in 2012, as well as our prior case law, make clear that each image constituted a separate act. Consequently, the State maintains that its evidence was sufficient to prove multiple instances of possession of material visually portraying a minor engaged in sexually explicit conduct since each of the twenty images constituted a separate act for purposes of sentencing under West Virginia Code § 61-8C-3 (2010).

30

In addressing the parties' arguments, we are informed by our prior case law. "A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syl. Pt. 7, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992). As we explained in *State v. McGilton,* 229 W.Va. 554, 729 S.E.2d 876 (2012),

> "[a] claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syllabus Point 7, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992). . . . As helpful as the various rules of statutory construction may be in determining legislative intent, perhaps the soundest guidance comes from the Supreme Court's admonition that we give the language of a statute a "commonsensical meaning." *United States v. Universal Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952).

*McGilton*, 229 W.Va. at 562, 729 S.E.2d at 884. More recently, we held that "[t]he analysis of whether a criminal defendant may be separately convicted and punished for multiple violations of a single statutory provision turns upon the legislatively intended unit of prosecution." Syl. Pt. 4, *State v Goins*, 231 W.Va. 617, 748 S.E.2d 813 (2013).

At the time of the petitioner's criminal conduct in the case at bar, West Virginia Code § 61-8C-3 provided, in part: "Any person who, with knowledge, sends or causes to be sent, or distributes, exhibits, possesses or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony[.]" The petitioner does not assert, nor do we find, any ambiguity in this statutory language. *See* Syl.

31

Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."); *see also* Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). In addressing the plain meaning of the statutory words "possesses" and "any material," we find guidance in *State v. Green*, 207 W.Va. 530, 534 S.E.2d 395 (2000).

In *Green*, the defendant asserted a double jeopardy violation in relation to her convictions on ten separate counts of uttering that arose from her contemporaneous presentment of ten forged money orders. The Court examined the phrase "any writing" in the uttering statute[44] in determining the legislatively-intended unit of prosecution. Reasoning that the term "any" in the context of the singular noun "writing" reflected a singular unit of prosecution, the Court found that, without violating double jeopardy, the defendant could be charged with separate offenses based upon each document uttered. *Id.* at 538, 534 S.E.2d at 403.

---

[44]*See* W.Va. Code § 61-4-5(a) (emphasis added) ("If any person forge *any* writing, . . . to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged, he shall be guilty of a felony . . . .").

Similarly, in the case at bar, rather than utilizing the plural word "materials," the Legislature chose to use the word "material" in West Virginia Code § 61-8C-3. We agree with the State that as used in this statutory context, "material" refers to the particular media that is "visually portraying a minor engaged in any sexually explicit conduct[,]" whether it be a photograph, digital image, video, etc. Moreover, the use of the singular "minor," rather than the plural "minors," reflects the Legislature's intent to protect each and every child victim. Similar reasoning was expressed in *Commonwealth v. Davidson*, 938 A.2d 198 (Pa. 2007).

In *Davidson*, the court addressed the defendant's double jeopardy challenge to his multiple convictions for violating Pennsylvania's child pornography statute.[45] Concluding that "[t]he General Assembly's use of the term 'any,' which could mean one or more items, suggests a lack of restriction or limitation[,]" the court found there was no violation of double jeopardy in the defendant's convictions on multiple counts of violating the child pornography statute. *Id.* at 219. Explaining further, the court stated

> it is not difficult to discern why the General Assembly would target individual instances of possession. Each use of a minor to create a visual depiction of child pornography constitutes a

---

[45]The Pennsylvania statute provided that "it is a violation of the law for '[a]ny person who knowingly possesses or controls *any* book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction *or other material*' which depicts a minor 'engaging in a prohibited sexual act or in the simulation of such act.'" *Davidson*, 938 A.2d at 218-19 (citation omitted) (emphasis added).

> separate and distinct abuse of that child, and thus represents an individual violation of the statute. . . . We conclude that each image of child pornography creates a permanent record of a child's abuse, which results in continuing exploitation of a child when the image is subsequently viewed.

*Id.* We agree with the reasoning of the Pennsylvania Supreme Court. Indeed, we recently expressed similar reasoning in *Morgan v. Ballard*, No. 11-1677, 2013 WL 149602 (W.Va. Jan. 14, 2013) (memorandum decision).

In *Morgan*, the petitioner sought a writ of habeas corpus, arguing that his trial counsel was ineffective for failing to raise a double jeopardy argument in relation to his multiple convictions of violating West Virginia Code § 61-8C-3 (2010). He asserted that his convictions on ten counts should have been considered in the aggregate as one count. In upholding the circuit court's denial of habeas relief, this Court "adopt[ed] and incorporat[ed] the circuit court's well-reasoned findings and conclusions,"[46] which included the lower court's conclusion that "our statutes protecting children from exploitation are interpreted to mean that possession of each photograph is a separate act and is a distinct and separate unit of prosecution allowing the State of West Virginia to charge separate counts and prosecute each act of possession." *Id.* at \*19; *see also State v. Richard D.*, No. 13-1250, 2015 WL 3751819 (W.Va. June 15, 2015) (memorandum decision) (affirming defendant's convictions

---

[46]We appended a copy of the circuit court's order to the Court's memorandum decision. *Id.* at \*2

on five counts of possession of material depicting minor engaged in sexually explicit conduct in violation of West Virginia Code § 61-8C-3).

Viewing all of the evidence in the light most favorable to the prosecution,[47] we find the State's evidence was sufficient to prove that each of the twenty images depicted a minor engaged in sexually explicit conduct and, for the reasons stated above, each image constituted a separate violation of West Virginia Code § 61-8C-3 (2010). Accordingly, we find no violation of double jeopardy.

## 2. Multiple Punishments for Same Offense

The petitioner argues that he has been subjected to multiple punishments for the same offense in violation of the double jeopardy clause through the circuit court's entry of the jointly submitted second amended sentencing order. The petitioner contends that the second amended sentencing order is illegal because it directs counts one through six to run consecutively, whereas the earlier sentencing orders directed counts one through five to run consecutively. Having begun to serve his sentence at the time the second amended sentencing order was entered, the petitioner contends that his sentence was impermissibly increased by two years because he should have been sentenced to a total of fifteen, rather than seventeen, years.

_____

[47]*Guthrie*, 194 W.Va. 657, 461 S.E.2d 163, syl. pt. 3, *supra*.

Citing Rule 35(a) of the Rules of Criminal Procedure, the State acknowledges that the trial court was obligated to correct the petitioner's sentence by reducing the seven-year recidivist sentence imposed in the first amended sentencing order to the five years imposed in the second amended sentencing order. To compensate for this two-year reduction in the recidivist sentence given the trial court's express intent to impose a total period of incarceration of seventeen years, the State asserts that the jointly proposed second amended sentencing order directed counts one through six, rather than one through five, to be served consecutively. Because the petitioner's total sentence did not increase through the court's entry of the second amended sentencing order, the State argues that there has been no violation of double jeopardy.

Importantly, the double jeopardy clause does not relieve a defendant from the consequences of his voluntary choice to invalidate his original punishment. *See United States v. Scott*, 437 U.S. 82, 99 (1977) ("the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.").[48] Indeed, we are unpersuaded that the double jeopardy clause is violated when a

---

[48]In *Commonwealth v. Cumming*, 995 N.E.2d 1094, 1097 (Mass. 2013), the court addressed a defendant's double jeopardy challenge concerning the trial court's restructuring of the lawful portions of his sentencing during re-sentencing. The defendant argued that only the unlawful portion of his sentence could be modified. The Massachusetts court disagreed, finding that the "restructuring [of] the 'final' lawful portions of the defendant's sentences under rule 30(a) . . . [had] not placed [the defendant] twice in jeopardy." 995 N.E.2d at 1097.

(continued...)

court restructures the lawful portions of a defendant's sentence when correcting the unlawful portions pursuant to a Rule 35(a) motion where, as here, the sentence is within statutory limits and the aggregate sentence has not increased.

It is axiomatic that sentencing is left to the sound discretion of the trial court. *See* Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997) (finding that sentencing matters are generally reviewed "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands."). Moreover, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). Inasmuch as the circuit court expressed its intent in the second amended sentencing order to impose an aggregate period of incarceration of seventeen years, as it had done in the first amended sentencing order, and because the sentences imposed in the second amended sentencing order are within statutory limits[49] and are not based upon an impermissible factor, we find no double jeopardy violation.

---

[48](...continued)
The court further observed that "[b]y filing a motion to correct his unlawful sentence . . . the defendant knowingly exposed himself to the possibility that his entire sentencing scheme might be restructured." *Id.* at 1098.

[49]*See supra* note 13; *see also* W.Va. Code § 61-11-18 (2010).

## E. Right to be present at sentencing

The petitioner asserts that the trial court erred and violated his due process right to be present at every stage of his trial by entering the submitted second amended sentencing order outside his presence. Alleging that the first two sentencing orders were void because the court misapplied the recidivist enhancement, he argues that it was necessary for him to be present at the critical stage when the circuit court entered the jointly proposed second amended sentencing order. He further argues that the error is not harmless.

The State responds that there is no error in this regard. Citing the petitioner's two prior sentencing hearings, the State argues that there was no need for any further factual development prior to the circuit court's entry of the second amended sentencing order, which was jointly proposed by the parties to correct a technical issue of law on the recidivist sentencing.

We have long held that "[t]he defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." Syl. Pt. 6, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977); *see also* W.Va. R. Crim. P. 43 (a) ("The defendant shall be present . . .

38

at every state of the trial including . . . at the imposition of sentence, except as otherwise provided by this rule.").

Here, the parties jointly proposed the second amended sentencing order, which was "unrelated to the underlying truth-finding process . . . and only correct[ed] the improper [recidivist] sentence." *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 142, 254 S.E.2d 805, 812 (1979). Further, "[a] defendant need not be present . . . [a]t a conference or argument upon a technical question of law not depending upon facts within the personal knowledge of the defendant." W.Va. R. Crim P. 43(c)(3); *see also State v. Conley*, 168 W.Va. 694, 697 n.2, 285 S.E.2d 454, 456 n.2 (1981) ("Federal courts and the courts of sister states have laid down the rule that the right of a defendant to be present does not extend to post-trial hearings where only questions of law are determined.").

In the instant matter, the appendix record reflects that the petitioner requested a hearing in his *pro se* Rule 35(a) motion filed in January 2014. However,

> [i]n correcting an illegal sentence under Rule 35(a) of the West Virginia Rules of Criminal Procedure, a trial court has discretion to correct the sentence without holding a *de novo* resentencing hearing. This Court will not reverse the denial of a request for a *de novo* resentencing hearing on a trial court's correction of a sentence under Rule 35(a) absent a showing of an abuse of discretion.

Syl. Pt. 2, in part, *State v. Tex B.S.*, 236 W.Va. 261, 778 S.E.2d 710 (2015).[50]

Inasmuch as the petitioner had two sentencing hearings, and given that the parties jointly submitted the proposed second amended sentencing order for entry to "correct technical question of law not depending upon facts within the personal knowledge of the defendant,"[51] we find no abuse of discretion in the circuit court's adoption and entry of the jointly proposed order without holding a third sentencing hearing. *Id.*

### F. Sentencing under Amended Statute

Through this Court's administrative order entered on February 4, 2015, we directed the parties to address whether the petitioner "may elect to be sentenced under the revised version of W.Va. Code § 61-8C-3 that mitigated the punishment for possessing multiple images of materials depicting minors engaged in sexually explicit conduct." Although the petitioner assigned as error the issue of whether he should have been sentenced under West Virginia Code § 61-8C-3, as amended in 2014, in his notice of appeal filed on June 5, 2015, he did not specifically address this issue in his appellate brief. The State followed the Court's directive and addressed the issue in its appellate brief.

---

[50]"'As a general rule, judicial decisions are retroactive in the sense that they apply both to the parties in the case before the court and to all other parties in pending cases.' *Crowe v. Bolduc*, 365 F.3d 86, 93 (1st Cir. 2004)." *Caperton v. A.T. Massey Coal Co., Inc.*, 225 W.Va. 128, 156, 690 S.E.2d 322, 350 (2009).

[51]*See* W.Va. R. Crim. P. 43(c)(3).

40

In 2014, the Legislature made significant changes to West Virginia Code § 61-8C-3, which now provides, as follows:

(a) Any person who, knowingly and willfully, sends or causes to be sent or distributes, exhibits, possesses, electronically accesses with intent to view or displays or transports any material visually portraying a minor engaged in any sexually explicit conduct is guilty of a felony.

(b) Any person who violates the provisions of subsection (a) of this section when the conduct involves fifty or fewer images shall, upon conviction, be imprisoned in a state correctional facility for not more than two years or fined not more than $2,000 or both.

(c) Any person who violates the provisions of subsection (a) of this section when the conduct involves more than fifty but fewer than six hundred images shall, upon conviction, be imprisoned in a state correctional facility for not less than two nor more than ten years or fined not more than $5,000, or both.

(d) Notwithstanding the provisions of subsections (b) and (c) of this section any person who violates the provisions of subsection (a) of this section when the conduct involves six hundred or more images or depicts violence against a child or a child engaging in bestiality shall, upon conviction, be imprisoned in a state correctional facility for not less than five nor more than fifteen years or fined not more than $25,000, or both.

(e) For purposes of this section each video clip, movie or similar recording of five minutes or less shall constitute seventy-five images. A video clip, movie or similar recording of a duration longer than five minutes shall be deemed to constitute seventy-five images for every two minutes in length it exceeds five minutes.

W.Va. Code § 61-8C-3 (2014). The State argues that the petitioner cannot elect to be sentenced under the 2014 version of the statute because (1) his offense, indictment, convictions, and sentencing all occurred well prior to the effective date of the amended statute, and (2) the Legislature gave no indication that the revised version of the statute was retroactive. Notwithstanding our decision in *State v. Cline*, 206 W.Va. 445, 525 S.E.2d 326 (1999), which would impel a contrary result, we agree with the State.

In *Cline*, the defendant was arrested for driving on a suspended or revoked license in violation of West Virginia § 17B-4-3(a) (1994). Upon his trial and conviction, he was sentenced by order dated August 10, 1998, to forty-eight hours in jail and fined $250.00 pursuant to the mandatory provisions of West Virginia Code § 17B-4-3(a) (1994). On appeal, Mr. Cline argued that he should not receive a jail sentence for his conviction because the Legislature amended West Virginia Code § 17B-4-3, effective April 7, 1999, so as to eliminate the incarceration penalty for this crime. In reliance upon West Virginia Code § 2-2-8 (2013),[52] the general savings statute, Mr. Cline asserted that because the "'penalty or

---

[52]West Virginia Code § 2-2-8 provides, as follows:

> The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or
>
> (continued...)

42

punishment'" imposed by the 1994 statute is "'mitigated by the new law[,]'" he was entitled to choose to be sentenced under the 1999 amendment. *Cline*, 206 W.Va. at 451, 525 S.E.2d at 332. This Court agreed and remanded the matter for resentencing.

While there were no new points of law expressly set forth in *Cline,* the opinion effectually expanded our prior precedent, which we now take the opportunity to address. Indeed, we are persuaded that the separate opinion penned by Justice Davis in *Cline* reached the correct result.

Justice Davis expressed grave concern that "the unwarranted and unprecedented interpretation given by the majority to W. Va. Code 2-2-8 sets the stage for voiding countless criminal sentences." *Cline*, 206 W.Va. at 452, 525 S.E.2d at 333 (Davis, J., concurring, in part, and dissenting, in part).[53] As Justice Davis aptly explained in her separate opinion, West Virginia Code § 2-2-8 provides a defendant with

> the right to elect between being sentenced under a new or repealed statute *only when* the sentence is imposed "after" the

---

[52](...continued)
> punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied *to any judgment pronounced **after** it has taken effect*.

*Id.* (emphasis added).

[53]Justice Davis concurred only to the extent that the majority affirmed the defendant's conviction and monetary fine. *Cline*, 206 W.Va. at 452, 525 S.E.2d at 452.

new law has taken effect. The majority has taken this simplistic and unambiguous statute and ruled that a defendant has a right to elect between being sentenced under a new or repealed statute, even though the new statute took effect after the judgment was rendered. This twisted interpretation of the statute now permits every defendant, currently sentenced and incarcerated, to seek resentencing under any new and more lenient statute enacted after his or her sentence has been imposed. This is absolutely illogical. "To give [a] new statute retroactive effect in these circumstances would stretch the concept of retroactivity beyond any known case or principle." *White v. Gosiene*, 187 W.Va. 576, 582, 420 S.E.2d 567, 573 (1992).

*Cline*, 206 W.Va. at 452-53, 525 S.E.2d at 333-34. Highlighting the clear fallacy in the majority's opinion in *Cline* is syllabus point six of *State v. Easton*, 203 W.Va. 631, 510 S.E.2d 465 (1998), which was issued only a year earlier:

When a criminal defendant is convicted of a crime and the penal statute defining the elements of the crime and prescribing the punishment therefor is repealed or amended after his/her conviction of the crime but before he/she has been sentenced therefor, the sentencing court shall apply the penalties imposed by the statute in effect at the time of the offense, except where the amended penal statute provides for lesser penalties. If the amended penal statute provides lesser penalties for the same conduct proscribed by the statute in effect at the time of the offense, the defendant shall have an opportunity to elect under which statute he/she wishes to be sentenced, consistent with the statutory mandate contained in W.Va. Code § 2-2-8 (1923) (Repl. Vol. 1994) and our prior directive set forth in Syllabus point 2 of *State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 260 S.E.2d 820 (1979).

*Easton*, 203 W.Va. at 634, 510 S.E.2d at 468; *see also Cline*, 206 W.Va. at 453, 525 S.E.2d at 334 (Davis, J., concurring, in part, and dissenting, in part) (quoting *Easton*, 203 W.Va. at

44

634, 510 S.E.2d at 468, syl. pt. 6).  Our other precedent should have compelled a contrary

result in *Cline*, as well:

> This Court has never interpreted W.Va. Code 2-2-8 as permitting a defendant to elect between new and repealed sentencing statutes when the new statute took effect after his or her sentence was imposed.  *See State ex rel. Arbogast v. Mohn*, 164 W.Va. 6, 11, 260 S.E.2d 820, 823-824 (1979) ("W.Va. Code § 2-2-8 clearly provides for the application of mitigated penalties to *a judgment rendered after the effective date of a statutory amendment* upon the election of the party affected."). *See e.g., State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981); *Gibson v. Bechtold*, 161 W.Va. 623, 245 S.E.2d 258 (1978); *State v. Gregory*, 143 W.Va. 878, 105 S.E.2d 532 (1958); *State v. Mason*, 141 W.Va. 217, 89 S.E.2d 425 (1955); *State v. McClung*, 116 W.Va. 591, 182 S.E. 865 (1935).

*Cline*, 206 W.Va. at 453, 525 S.E.2d at 334 (Davis, J., concurring, in part, and dissenting, in

part) (emphasis in original).



Furthermore, Justice Davis readily dispensed with any argument that an

amendment during the pendency of an appeal would require application of the amended

statute:

> Obviously, the spurious argument can be made that a case does not become final until the appellate decision is rendered or the appeal period has expired.  We rejected this argument in *State ex rel. Miller v. Bordenkircher*, 166 W.Va. 169, 172, 272 S.E.2d 676, 678 (1980) (*per curiam*), wherein we stated:
>
> > To now conclude that petitioner is entitled to be set free, when he committed the crime of which he was convicted over twenty-four months before the new law went into effect *and was convicted*

*and sentenced some fifteen months before the old*
*law was repealed*, flies in the face of reason.

(Emphasis added.).

*Cline*, 206 W.Va. at 453 n.2, 525 S.E.2d at 334 n.2 (Davis, J., concurring, in part, and dissenting, in part). In the case at bar, the petitioner was first sentenced on October 19, 2012. Approximately twenty-one months later, the 2014 amendments to West Virginia Code § 61-8C-3 became effective.[54]

Recently, in *Richard D.*, No. 13-1250, 2015 WL 3751819 (W.Va. June 15, 2015) (memorandum decision), we addressed a defendant's argument that he should be sentenced on his convictions for five counts of violating West Virginia Code § 61-8C-3 under the 2014 version of the statute, which went into effect after he was sentenced. We denied relief, explaining that "the revision to West Virginia Code § 61-8C-3 did not take effect until after the time of the criminal acts, his entry of a nolo contendere plea, and his sentencing." *Richard D.*, at *3.

Given the discrepancy in our precedent on this issue, we now clarify our law and expressly hold that the statutory penalty in effect at the time of a defendant's criminal conduct shall be applied to the defendant's conviction(s). Where a statutory amendment

---

[54]The circuit court's first and second amended sentencing orders were also entered several months prior to the effective date of the 2014 amendments.

mitigating punishment becomes effective prior to sentencing, West Virginia Code § 2-2-8 (2013) allows a defendant to seek application of the mitigated punishment before the trial court. Any correction of sentence pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure shall be in accordance with the statutory penalty in effect at the time of the original sentencing. Insofar as the decision in *State v. Cline*, 206 W.Va. 445, 525 S.E.2d 326 (1999), is inconsistent with this holding, it is expressly overruled.

## IV. Conclusion

For the reasons stated above, the January 21, 2014, Second Amended Sentencing Order of the Circuit Court of Putnam County is hereby affirmed.

Affirmed.